**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>               Petitioner<br><br>To Issue Subpoenas For the Taking of Depositions and the Production of Documents. | Civil Action No. 11-CV-00395 |
| In the matter of the application of,<br><br>      CHEVRON CORPORATION,<br><br>for an order to require production of documents from<br><br>   AARON MARR PAGE AND<br>   DARIA FISHER PAGE<br><br>in an action pending before the Southern District of New York entitled<br><br>CHEVRON CORPORATION,<br><br>             Plaintiff,<br><br>    -against-<br><br>MARIA AGUINDA SALAZAR, et al.,<br><br>            Defendants.<br><br>    -and-<br><br>STEVEN DONZIGER, et al.,<br><br>            Intervenors, | Civil Action No. 11-CV-01942-RWT |

**CHEVRON CORPORATION'S MOTION FOR**
**AN ORDER HOLDING AARON MARR PAGE IN CONTEMPT,**
**COMPELLING THE PRODUCTION OF HIS HARD DRIVE AND**
**REQUIRING ADDITIONAL COURT-SUPERVISED DEPOSITION TIME**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ....................................................................................................... 1

    I.      Page Is Ordered to Comply with Two Subpoenas ................................. 1

          A.      The RICO Action .................................................................. 1

          B.      The Section 1782 Action ....................................................... 3

    II.     Page Fails to Comply with the Court's Production Orders..................... 3

    III.    Page's Document Production Deficiencies............................................ 4

    IV.   The Meet and Confer Process ............................................................. 6

    V.     Page's Obstructive Deposition Testimony............................................ 8

ARGUMENT ......................................................................................................... 10

    I.      Page's Refusal to Comply with the Court's Orders Warrants a Finding of
          Contempt and Sanctions ................................................................... 10

    II.     The Court Should Compel Page to Produce His Hard Drives and Other
          Electronic Data Storage Devices for Imaging and Inspection ............. 13

    III.    The Court Should Order Page to Sit for Additional Court-Supervised
          Deposition Time in the Page 1782 Action ......................................... 16

CONCLUSION....................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ameriwood Indus. Inc. v. Liberman*,
No. 4:06CV524-DJS, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006)....................................14

*Ashcraft v. Conoco, Inc.*,
218 F.3d 288 (4th Cir. 2000) ....................................................................................................11

*Balboa Threadworks, Inc. v. Stucky*,
No. 05-1157-JTM-DWB, 2006 WL 763668 (D. Kan. Mar. 24, 2006)..................................14

*Byrd v. Hoffman*,
No. AW–07–2960, 2008 WL 8883927 (D. Md. July 31, 2008)............................................11

*Chambers v. NASCO, Inc.*,
501 U.S. 32, 111 S. Ct. 2123 (1991).....................................................................................10

*Chevron Corp. v. Donziger*,
No. 11-cv-0691 (S.D.N.Y. Sept. 9, 2013) ...............................................................................8

*Columbia Gas Transmission Corp. v. Mangione Enterprises of Turf Valley, L.P.*,
964 F. Supp. 199 (D. Md. 1996)............................................................................................13

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
268 F.R.D. 45 (E.D. Va. 2010) ..............................................................................................16

*GTFM, Inc. v. Wal-Mart Stores, Inc.*,
No. 98 CIV 7724 (RPP), 2000 WL 335558 (S.D.N.Y. Mar. 30, 2000) ................................15

*In re Gen. Motors Corp.*,
61 F.3d 256 (4th Cir. 1995) .............................................................................................10, 12

*Koosharem Corp. v. Spec Pers., LLC*,
No. 6:08-583-HFF-WMC, 2008 WL 4458864 (D.S.C. Sept. 29, 2008) ...............................14

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*,
872 F.2d 88 (4th Cir.1989) .....................................................................................................11

*Nutramax Labs., Inc. v. Twin Labs., Inc.*,
32 F. Supp. 2d 331 (D. Md. 1999)..........................................................................................11

*Osrecovery Inc. v. One Groupe Int'l.*,
No. 02 CIV 8993 (LAK), 2003 WL 2004534 (S.D.N.Y. Apr. 16, 2003)...............................15

*Paul Revere Life Ins. Co. v. Jafari*,
206 F.R.D. 126 (D. Md. 2002).................................................................................................13

*Read v. Teton Springs Golf & Casting Club, LLC*,
No. 08-CV-00099, 2010 WL 2697596 (D. Idaho July 6, 2010).............................................14

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Robinson v. City of Arkansas City, Kansas,*
No. 10–1431–JAR–GLR, 2012 WL 603576 (D. Kan. Feb. 24, 2012) .................................... 15

*Simon Prop. Grp. L.P. v. mySimon, Inc.,*
194 F.R.D. 639 (S.D. Ind. 2000) ................................................................................ 14

*Wagner v. Bd. of Educ. of Montgomery County,*
340 F. Supp. 2d 603 (D. Md. 2004) ................................................................................ 11

**Statutes**

28 U.S.C. § 1782 ................................................................................................................. 3

**Rules**

Fed. R. Civ. P. 37(b)(2)(A)(vii) ............................................................................................. 10

Fed. R. Civ. P. 37(b)(2)(C) ..................................................................................................... 10

## PRELIMINARY STATEMENT

Aaron Marr Page has once again refused to provide relevant testimony during his deposition despite unambiguous orders from this Court to do so. He has also failed without explanation to produce all documents this Court has ordered him to produce in response to subpoenas by Chevron Corporation ("Chevron") in the two above-captioned actions.

Accordingly, Chevron respectfully requests that the Court (1) hold Page in contempt; (2) impose appropriate sanctions, including attorneys' fees; (3) order Page to sit for additional Court-supervised deposition time; and (4) require that all of Page's computer hard drives, USB drives, and other portable media storage devices be produced to Chevron for forensic copying and inspection.

## BACKGROUND

Page has repeatedly frustrated Court-ordered discovery in these actions. He has dribbled out over many months an incomplete document production, failed to turn over within a reasonable time documents that the Court specifically ordered him to keep in a "readily-accessible location" for prompt production (*Chevron Corp. v. Page*, No. 8:11-cv-1942 (D. Md.) ("Page RICO"), Dkt. 42 at 4), and obstructed his testimony at depositions in both the Page RICO action and in the Page 1782 action.

## I.     Page Is Ordered to Comply with Two Subpoenas

### A.     The RICO Action

On July 15, 2011, Chevron moved this Court to compel Page to comply with a subpoena issued in a RICO proceeding in the Southern District of New York ("SDNY Action") based on

Page's refusal to produce responsive documents or an adequate privilege log.[1]  Page RICO,

Dkt. 1.  The motion was referred to Magistrate Judge Day, who, on August 31, 2011, ordered

Page to produce responsive documents and finding that all privileges or protections related to the

subject matter in those documents were waived, either through disclosure to third parties (as part

of a waiver by Page's supervising attorney, Steven Donziger ("Donziger")), or on the basis of the

crime-fraud exception.  *Id.*, Dkt. 24.  After seeking and being denied a stay of that order (*id.*,

Dkt. 28), Page and the Lago Agrio Plaintiffs (the "LAPs") produced responsive documents on

September 2, 2011 (the "9/2/11 Documents") and filed Rule 72 objections to Magistrate Judge

Day's order on September 14, 2011.  *Id.*, Dkt. 29.  On December 14, 2011, following the Second

Circuit's stay of proceedings in a severed portion of the SDNY Action (and given the stay of

discovery in the remaining SDNY Action), the Court issued an order for Chevron to return the

9/2/11 Documents.  *Id.*, Dkts. 42, 43.  The Court further ordered that Page "must retain those

documents in a safe and readily-accessible location should the stay be lifted and the Court order

re-production."  *Id.*, Dkt. 42 at 4; *id.*, Dkt. 43 at 1.  The Court lifted the stay on January 24, 2013.

*Id.*, Dkt. 44.  On February 28, 2013, following motion practice on Page's Rule 72 objections,

Judge Titus affirmed Magistrate Judge Day's order in its entirety, ordering Page to reproduce the

---

[1] Page is arguing on appeal that the May 20, 2011 subpoena (the "5/20 Subpoena") is not valid as, he claims, it was issued in the now-defunct *Salazar* action.  Page is incorrect.  The 5/20 Subpoena issued to Page in connection with the SDNY Action shows on its face that it is issued in connection with the SDNY Action—a live lawsuit scheduled for trial this fall.  Page RICO, Dkt. 3-9 (5/20 Subpoena).  Further, the 5/20 Subpoena was issued *before* the *Salazar* case was created through the severance of one of the counts of the SDNY Action and therefore could not have been issued in connection with a case that did not exist at the time.

documents pursuant to the RICO subpoena.  *Id.*, Dkt. 50.  That affirmance is currently on appeal.  *See Chevron Corp. v. Page*, No. 13-1382 (4th Cir.).[2]

**B.     The Section 1782 Action**

On November 1, 2011, Chevron petitioned this Court for issuance of a subpoena to Page under 28 U.S.C. § 1782, seeking discovery for use in two foreign proceedings:  (1) the Ecuadorian litigation brought against Chevron by the LAPs; and (2) an arbitration brought by Chevron in The Hague pursuant to the United States-Ecuador Bilateral Investment Treaty against the Republic of Ecuador (the "Treaty Arbitration").  *In re Chevron Corp.*, No. 8:11-cv-395 (D. Md.) ("Page 1782"), Dkt. 1.  The matter was also referred to Magistrate Judge Day and, after a hearing on January 25, 2013, Magistrate Judge Day ordered production of Page's documents responsive to the Section 1782 subpoena.  *Id.*, Dkt. 51.  On February 9, 2013, Page and the LAPs filed objections to Magistrate Judge Day's order granting Chevron's Section 1782 application and findings as to waiver and crime fraud.  *Id.*, Dkt. 56.  This Court overruled those objections in their entirety on July 17, 2013.  *Id.*, Dkt. 74.  That affirmance is also currently on appeal.  *Chevron Corp. v. Page*, No. 13-2028 (4th Cir.).

**II.     Page Fails to Comply with the Court's Production Orders**

Following this Court's orders of January 24 and January 25, 2013, lifting the stay on RICO discovery (Page RICO Dkt. 44), and granting 1782 discovery (Page 1782 Dkt. 51), Page delayed production of his documents, producing small batches of documents over the course of four months and withholding for a month the 9/2/11 Documents that the Court ordered be kept in

---

[2]  On November 28, 2012, Chevron served a second subpoena on Page in the SDNY Action. Page served objections to this subpoena but his counsel represented that Page has made a complete production of documents responsive to that subpoena and has not withheld any documents on the basis of privilege or work product protection.  Page 1782, Dkt. 79-2 at 6, 8-10 (June 18, 2013 Transcript).

a "readily-accessible location" for prompt production. Declaration of Claudia M. Barrett ("Barrett Decl."), Exs. A, B, ¶ 29; Page RICO, Dkts. 42 at 4, 56-2, 56-3.

Months later, at a hearing on June 18, 2013, in both matters, Page, through his counsel, represented to the Court that he had produced all documents responsive to all the subpoenas issued to Page and that Page was not withholding any responsive documents on the basis of privilege. Page 1782, Dkt. 79-2 at 6, 8-10 (June 18, 2013 Transcript). After Page's representation that his production was complete, Chevron asked a forensic consultant to analyze Page's production and compare it to the production of documents from Page's employer Donziger. That analysis showed that Page's production did not include thousands of responsive emails sent to or received from Page that were produced by Donziger. Declaration of Michael McGowan ("McGowan Decl.") ¶ 16.

## III.    Page's Document Production Deficiencies

There were 3,469 email messages in Donziger's production where Page was a sender or recipient, and that were sent or received during the time period relevant to the Page subpoenas. McGowan Decl., ¶ 5. Page produced 2,931 emails in total in his productions. *Id.* at ¶ 6. Approximately 2,715 emails to or from Page were in the Donziger productions but were not produced in the Page productions. *Id.* at ¶ 7.[3]

A substantial number of the missing emails are responsive to one or more of the requests in Chevron's subpoenas to Page. *E.g.*, Barrett Decl., Ex. C (DONZ00055498; email outlining the agenda for a meeting among the LAPs' legal team regarding how to solve the problem

---

[3] During meet and confer, Page asserted that he did not produce every responsive email if the email was otherwise contained in an email chain. While that explanation itself is problematic and indicates a less-than-rigorous approach to his discovery obligations, there were still 995 emails to or from Page appearing in Donziger's production that do not appear in any email chain produced by Page. McGowan Decl., ¶ 19.

caused by the Cabrera fraud coming to light);[4] *id.*, Ex. D (DONZ-HDD-0034161; email regarding communications with counsel for the Republic of Ecuador regarding litigation between Ecuador and Chevron in the Southern District of New York).[5]  The complete chart of the 2,715 emails not contained in the Page production and the 995 emails not contained in any email chains in the Page production are attached as Exhibits E and F to the Barrett Decl. for the convenience of the Court.  These omitted documents include express references to relevant individuals (*e.g.*, Barrett Decl., Ex. G (DONZ-HDD-0034877) (Judge Guerra – Requests 3 and 22 in 5/20 subpoena; Requests 3 and 19 in 1782 subpoena); *id.*, Ex. H (DONZ00129596) (Calmbacher – Request 16 in 5/20 subpoena; Request 40 in 1782 subpoena); *id.*, Ex. I (DONZ00067810) (Cabrera – Requests 8, 9 and 23 in 5/20 subpoena; Requests 8 and 41 in 1782 subpoena)), entities (*e.g.*, *id.*, Ex. J (WOODS-HDD-0084110) (Amazon Watch – Request 34 in 11/28 subpoena); *id.*, Ex. K (DONZ00130040) (Winston & Strawn – Requests 16 and 17 in 11/28 subpoena)) and topics (*e.g.*, *id.*, Ex. L (DONZ00101562) (merger – Request 23 in 11/28 subpoena), *id.*, Ex. M (DONZ00067756 (the LAPs' alegato – same)) and a basic search of Page's hard drives and other electronic media should have identified them.[6]

---

[4] This document is responsive to Request 8 of the 5/20 Subpoena ("All DOCUMENTS RELATED TO CABRERA or any member of the PURPORTED CABRERA TEAM…") and Request 41 of the 1782 Subpoena ("All DOCUMENTS RELATED TO CABRERA or the PURPORTED CABRERA TEAM…").

[5] This document is responsive to Request 3 of the 5/20 Subpoena ("All DOCUMENTS RELATED TO meetings or COMMUNICATIONS between any PERSON, on the one hand, and the ROE [Republic of Ecuador, defined as including "attorneys . . . or any other PERSON or entity acting, or purporting to act, on the ROE's behalf…"], on the other hand, regarding CHEVON or the CHEVRON LITIGATIONS…") and to Request 3 of the 1782 Subpoena (same).

[6] These emails are just a few examples of the evidence withheld by Page.  If the Court would find it useful, Chevron can provide a complete set of the documents Chevron has identified that are missing from Page's production.

## IV.    The Meet and Confer Process

Chevron's substantial and lengthy efforts to meet and confer with Page concerning the deficiencies in his document production have proved futile.  Chevron originally contacted Page's counsel in late July to notify him about his production deficiencies and to request that Page permit Chevron to image Page's hard drives and USB media storage devices to identify all responsive documents, and even offered to enter into a protective order concerning potentially privileged, confidential or non-responsive materials.  Barrett Decl., Ex. N.[7]  Chevron thereafter agreed to a short postponement of Page's deposition in the 1782 action to give the parties a chance to resolve the outstanding document issues.  Page 1782, Dkt. 79-6.

During initial discussions, Page's counsel also notified Chevron that he had not been paid in months and would be withdrawing from his representation of Page, although he would "remain on this case to assist the process, appear at hearings, handle meet and confers and other small issues on a pro bono basis."[8]  Page 1782, Dkt. 79-6 at 17.  Accordingly, Chevron

---

[7] Chevron would use its consultant Stroz Friedberg to image and review Page's electronic repositories, following a standard review protocol, detailed in the McGowan Declaration, filed herewith.  *See* McGowan Decl. ¶¶ 20-23.  This protocol is identical to the protocol used in the Southern District of New York with regard to Donziger's electronic media in a related § 1782 action.  *In re Chevron Corp.*, No. 1:10-mc-00002-LAK, Dkt. 171 (S.D.N.Y. Jan. 21, 2011) (ordering that Donziger produce his hard drives for imaging forthwith after Chevron filed proposed protocol with that court).

[8] Page's counsel, Christopher Gowen, in fact continues to be intimately involved in this matter.  Despite Page telling this Court on August 22nd that Page had been handling these actions by himself ("I basically have been handling this case pro se") and that Gowen was "intending to file papers for withdrawal either today or soon thereafter" (Barrett Decl., Ex. O at 5:14-6:2 (Transcript)), Gowen continues to work for Page and the LAPs.  This charade of Gowen's withdrawal appears to be solely designed to give the impression that Page is working alone when, in fact, he has several resources at his disposal.  Gowen entered an appearance on behalf of Page in the appeal of the Page 1782 order.  *Chevron Corp. v. Page*, No. 13-2028, Dkt. 10 (4th Cir.).  Earlier this summer, Gowen also entered an appearance in the appeal of the Page RICO order.  *Chevron Corp. v. Page*, No. 13-1382 (4th Cir.), Dkt. 24. Moreover, over the past month, Gowen has issued several misleading press releases and made

continued to engage in further meet and confer discussions directly with Page.  In an initial meet

and confer call with Page, he admitted that he could not explain why some of the omitted

documents were omitted.[9]  Barrett Decl. ¶ 30.  During that call, Page also asked Chevron to

remove duplicative chain emails from the set of missing emails and to provide him those emails

categorized by subject matter.  *Id.*  Despite the fact that Page should have produced all

responsive emails, whether they subsequently were contained in an email chain or not, in the

interest of attempting to resolve these issues without having to seek court intervention, Chevron

and Stroz Friedberg have spent considerable effort culling out chain emails and categorizing the

documents, per Page's request.  McGowan Decl. ¶¶ 17-19.

On September 9, Chevron provided hundreds of de-duped emails to Page for his review

as well as a list of proposed additional search terms to be run, offering to do the searches itself.

Barrett Decl., Ex. P. The parties engaged in additional discussions the following two weeks, but

it has become increasingly clear that these efforts are futile.  Not only has Page not provided any

explanation for the deficiencies that Chevron uncovered, he has yet to produce the additional

documents that he already admitted he identified through searches he ran.  Barrett Decl., Exs. P,

Q.  Instead Page has provided pretextual excuses for his failure to meet his discovery obligations,

including his claim that he is "among the very few remaining lawyers on the defense side of the

---

comments to the media on behalf of the LAPs, who are Page's clients, touting himself as an "adviser to and spokesperson for Steven Donziger."  *See* Barrett Decl., Exs. R-W, AA.

[9]  In that call, Chevron asked Page to provide a list of the search terms he used to identify responsive documents in order to determine whether the search terms were adequate.  Page provided his search term lists to Chevron on August 19, 2013.  Barrett Decl., Ex. X.  The lists exclude key terms.  For example, the word "fusion," which refers to the "Fusion memo" which helped to form the basis for the Court's crime-fraud findings, was absent from the lists, as were the names of the Post-Cabrera Cleansing Consultants, even though Chevron's subpoenas requested documents relating to those individuals by name.

RICO case that is going to trial on October 15,"[10] (*id*.), and that the parties need to re-initiate discussions about the scope of the subpoena, something for which the time has clearly passed (Barrett Decl., Ex. Q).

## V.    Page's Obstructive Deposition Testimony

Throughout Page's five-hour deposition on August 23, 2013, he employed various tactics designed to obstruct his testimony:[11]

- Page pretended not to understand clear and unambiguous questions;[12]

---

[10] Page misrepresents the lack of legal counsel on the defense side in the SDNY action. Judge Kaplan recognized earlier this month that "notwithstanding [Donziger's and the LAPs'] attempts to portray themselves as Davids, each alone facing Goliath, the reality is quite different." *Chevron Corp. v. Donziger*, No. 11-cv-0691, Dkt. 1407 at 18 (S.D.N.Y. Sept. 9, 2013).  Judge Kaplan elaborated:

> From the outset, the LAP Representatives have been assisted substantially by Patton Boggs, a firm of hundreds of layers with professional standing comparable to that of Chevron's counsel and a huge contingent fee that hinges on the collection of the Judgment.  In some instances, including this case, it has kept its involvement secret.  It has written papers submitted to this Court under the names of other lawyers. It openly has represented and continues to represent the LAPs in numerous appellate and other proceedings in this and other cases, including both *Naranjo* and the mandamus petition here. There is no evidence warranting a conclusion it will not assist Mr. Gomez, the LAP Representatives' counsel of record, through the trial here in view of Patton Boggs' responsibilities to its Ecuadorian clients and its own economic interest in avoiding a result here that Mr. Gomez says would 'prejudice[]' proceedings to enforce the Judgment elsewhere.  Nor is Mr. Donziger the only lawyer involved in his defense.  He benefits from the efforts of Mr. Gomez and Patton Boggs, as the interests of Mr. Donziger and the LAPs are closely aligned."

> *Id.* at 18-20 (footnotes omitted).

[11] Chevron also deposed Page on September 15, 2011 in the Page RICO action.  Page's conduct at that deposition was equally obstructive, with Page refusing to answer on the basis of privilege questions related to issues over which the Court found no privilege remains.  *See, e.g.*, Page RICO, Dkt. 36-2.

[12] *See, e.g.*, Barrett Decl., Ex. Y at 38:5-19 (Q:  Was there a time when you were coordinating with Winston & Strawn counsel for the Republic as counsel for the Ecuadorian plaintiffs?; A: I'm not sure what you mean by coordinating.; Q:  Were you working with them?; A:  I'm not sure what you mean by working with them.; Q:  What is unclear about that?; A:  Working

- He refused to answer others;[13]

- He made lengthy speeches and extraneous comments at every opportunity, clearly to waste deposition time;[14] and

- He was combative and belligerent throughout.[15]

Due to Page's conduct, Chevron sought and received the Court's direction mid-deposition with regard to the Court's prior crime-fraud rulings. During this call, the Court confirmed that the waiver of privilege is a broad subject matter waiver that applied to documents **and** testimony, and that Page's personal mental impressions are protected only insofar as (1) they were not shared with anyone, and (2) relate only to the Donziger waiver, but not to the subjects where the Court found crime-fraud. Barrett Decl., Ex. Y at 98:18-121:25 (Transcript). Judge Day specifically ruled that Page had to answer questions related to the efforts to prevent the Cabrera fraud from coming out in the Stratus 1782 proceedings in Colorado (*id.* at 119:19-120:22) (holding that it is "fair examination" to ask Page about the cover-up of the Cabrera fraud

---

with them is an extraordinarily broad term. I'm not sure what you mean when you say working with them. There's a lot of lack of clarity in that question.).

[13] *See, e.g.*, *id.* at 193:9-194:3 (refusing to answer question about the Cabrera fraud); *id.* at 206:16-207:20 (same).

[14] *See, e.g.*, *id.* at 78:3-79:5 (taking one page to answer one question); *id.* at 166:9-167:16 (same); *id.* at 185:4-187:16 (taking two and a half pages to answer one question); *id.* at 217:19-222:5 (taking four and a half pages to answer one question).

[15] *See, e.g.*, *id.* at 41:17-42:7 (Q: You don't recall receiving that instruction in writing?; A: I don't recall receiving that instruction in writing, no, but venga.; Q: I'm sorry, what?; A: Venga.; Q: What does that mean?; A: Obviously you're going to give me a document that says that instruction in writing so let's talk about the document instead of wasting our time with this precursor.; Q: I didn't understand the word, did you say venga?; A: I said venga, bring it.)*; id.* at 46:14-16 (Q: And is your date of birth September 18th of 1975?; A: So far as I can recall.); *id.* at 152:25-153:5 (Q: In your February 2010 trip to Ecuador, did you meet with anyone other than Ecuadorian counsel and Mr. Donziger?; A: I don't know what you mean by anyone. I probably met some taxi drivers.); *id.* at 224-19-225:4 (Q: I hand you Exhibit 4220 . . . Can you read the text of your e-mail to Ms. Garr for the record?; A: I think you can read it; Q: Are you refusing to read it, Mr. Page?; A: I suppose I am.).

during the Stratus 1782 proceedings and that "he has to testify as to" the conversations Page had

with LAPs' counsel and Donziger regarding the Stratus 1782 and subsequent Cabrera cover-up).

Page, however, ignored the Court, continuing to claim privilege over questions relating to

the Cabrera cover up. *See, e.g.*, *id.* at 189:20-190:5 ("Q. By this point in time, March 14th of

2010, had Mr. Donziger disclosed to you that Stratus had written the bulk of the Cabrera report?;

A. Again, I'm going to sort of stand on my objections here with respect to privilege. I'm not

talking generally about my conversations with Mr. Donziger who is my client outside of what

I've been ordered to discussion with the Court.").[16]

## ARGUMENT

**I.    Page's Refusal to Comply with the Court's Orders Warrants a Finding of Contempt and Sanctions**

In the face of unambiguous orders issued by the Court, Page has failed to provide

responsive documents in his possession and has failed to provide testimony. The Court should

hold Page in contempt and assess sanctions.

"[I]t is firmly established that the power to punish for contempt is inherent in all courts."

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 2132 (1991) (quotation marks and

alteration omitted). Under Federal Rule of Civil Procedure 37, courts may "treat[] as contempt

of court the failure to obey any [discovery] order," Fed. R. Civ. P. 37(b)(2)(A)(vii), and in

addition may "order the disobedient party, the attorney advising that party, or both to pay the

reasonable expenses, including attorney's fees, caused by the failure," Fed. R. Civ. P.

37(b)(2)(C); *see also In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (a court may

impose sanctions for civil contempt "to coerce obedience to a court order or to compensate the

---

[16]  Videotaped excerpts of the deposition capturing some examples of Page's objectionable behavior are filed herewith as a DVD Exhibit. *See* Barrett Decl., Ex. Z.

complainant for losses sustained as a result of" violation of a court order) (internal quotation marks omitted).

The Fourth Circuit evaluates the appropriateness of Rule 37 sanctions using a four-part test: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice its noncompliance caused its adversary; (3) the need for deterrence on the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Nutramax Labs., Inc. v. Twin Labs., Inc.*, 32 F. Supp. 2d 331, 338 (D. Md. 1999) (citing *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir.1989)). Further, civil contempt is shown by establishing by clear and convincing evidence: "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) ... that the decree was in the movant's favor; (3) ... that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and (4) ... that [the] movant suffered harm as a result." *Wagner v. Bd. of Educ. of Montgomery County*, 340 F. Supp. 2d 603, 619-620 (D. Md. 2004) (citing *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)) (internal quotation marks omitted). Willfulness is not an element of civil contempt. *Id.* at 620.

Chevron has established the elements of contempt under Rule 37. First, Page's bad faith is evident by his on-going refusal to comply with unambiguous court orders, including his failure to complete his production, despite acknowledging that responsive documents have yet to be produced, and his obstructionist deposition behavior. Second, Chevron has "incurred harm through [its] . . . efforts to obtain the requested information and the preparation and prosecution of [this] [c]ontempt [m]otion" as a result of Page's noncompliance with this Court's orders. *Byrd v. Hoffman*, No. AW–07–2960, 2008 WL 8883927, at *3 (D. Md. July 31, 2008). Page's continual delays threaten to prejudice Chevron by preventing it from obtaining likely important

incriminating evidence. Third, absent the requested sanctions, Page will certainly continue to defy this Court's orders. Page has already shown that he will only comply as a last resort. He currently is in possession of responsive documents that he has yet to produce, and a reading of his deposition transcript shows his disregard of the Court's rulings. Fourth, sanctions are appropriate at this point given Chevron's considerable—and futile—efforts to resolve these matters without Court intervention.

Chevron also has satisfied the factors warranting a finding of civil contempt against Page. First, given his extensive and personal involvement in these cases, Page cannot disclaim any ignorance of the Court's orders, particularly since Magistrate Judge Day reiterated his crime-fraud rulings directly to Page in the middle of his deposition. Second, the Court's orders were issued in Chevron's favor. Third, Page violated the orders by failing to produce all responsive documents in his possession, a fact he has already acknowledged, and by refusing to answer non-objectionable questions at his deposition. As noted above, even after the Court ordered Page to answer questions relating to the Cabrera fraud, Page continued to claim privilege over that subject matter. Fourth, as noted above, Chevron has been harmed through having to expend substantial resources to detect Page's document deficiencies, to attempt to obtain Page's cooperation in remedying them, and to prepare for Page's non-productive depositions, much of which could have been avoided had Page complied with his obligations and the orders of this Court.

The Court has broad discretion to fashion an appropriate remedy for contempt. *In re GMC*, 61 F.3d at 259. "Remedies include ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." *Id.* (citation omitted). Attorneys' fees and the cost of having a forensic consultant conduct extensive analysis on Page's productions are

12

warranted in this case where Page's noncompliance is "more than just 'neglect and carelessness,'" but instead is a result of the "studied indifference to the Court and opposing counsel, rising to the level of obstinence or recalcitrance." *Columbia Gas Transmission Corp. v. Mangione Enter. of Turf Valley, L.P.*, 964 F. Supp. 199, 204 (D. Md. 1996). The Southern District of New York has already recognized this strategy of the RICO action's Defendants and their agents and co-conspirators, noting that through delay "the tactical advantage that Donziger and the Lago Agrio plaintiffs have gained and the disadvantage to which they have put their adversaries was" not the result of accident or mistake, but was "intended . . . to achieve that tactical advantage at their adversaries' expense." *In re Chevron Corp.*, No. 1:10-mc-00002-LAK, Dkt. 124 at 24 (S.D.N.Y. Nov. 30, 2010).

Furthermore, sanctions are warranted because "another order confirming that the Court really meant what it said in the first instance" will not remedy Page's noncompliance, as is evident from Page's conduct following Court intervention during his deposition. *Paul Revere Life Ins. Co. v. Jafari*, 206 F.R.D. 126, 127, 128-29 (D. Md. 2002) (imposing sanctions of fees and costs and additional deposition time where party failed to comply with discovery rulings). Because this disregard for the Court's discovery orders fits into a larger pattern of delay and obstruction by Page and his allies, "there is a clear need for deterrence" of this behavior. *See Nutramax*, 32 F. Supp. 2d at 338 ("This litigation . . . will likely involve other issues of privilege and waiver with respect to Faloon and possibly other witnesses; therefore, it is appropriate for the Court to deal directly with this situation. There is a clear need for deterrence of this particular sort of noncompliance, now or in the future, in this litigation.").

II.    **The Court Should Compel Page to Produce His Hard Drives and Other Electronic Data Storage Devices for Imaging and Inspection**

To remedy Page's deficient document production, the Court should order him to produce

his hard drives and other electronic media storage devices for imaging and inspection by Chevron's forensic expert.[17]  The Court further should require Page to provide Chevron with access to all relevant shared drives, and all other electronic storage management devices Page used during the relevant period, including his online email accounts.

Courts may compel imaging and inspection of computer equipment where electronic evidence is important to the requesting party's claims, where a response to a discovery request contains discrepancies or inconsistencies, or where the responding party has failed to produce responsive information.  *See, e.g.*, *Read v. Teton Springs Golf & Casting Club, LLC*, No. 08-CV-00099, 2010 WL 2697596, at *10 (D. Idaho July 6, 2010) (ordering forensic examination of a hard drive where "the record shows an unexplained absence of e-mails"); *Koosharem Corp. v. Spec Pers., LLC*, No. 6:08-583-HFF-WMC, 2008 WL 4458864, at *2 (D.S.C. Sept. 29, 2008) (allowing forensic analysis of defendants' computers based upon failure to produce documents and relevance of electronic information stored thereon); *Ameriwood Indus. Inc. v. Liberman*, No. 4:06CV524-DJS, 2006 WL 3825291, at *1 (E.D. Mo. Dec. 27, 2006) (ordering hard drive imaging because the court had "cause to question whether defendants have produced all responsive documents"); *Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *4 (D. Kan. Mar. 24, 2006) (permitting hard drive imaging where representation that no responsive materials existed on computer was contradicted by evidence); *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) (allowing plaintiff to inspect

---

[17]  It will not burden Page to make his computers and other storage equipment available for imaging as the expert analysis and searches are performed off-site by a vendor, without any disruption to Page.  And because Chevron will pay for the expert's work, Page cannot complain of the cost.  Where a responding party cannot point to a legitimate burden and there is no issue with respect to confidentiality (as is the case here, given that Page, Donziger and the LAPs waived their privilege and any forensic analysts would be required to sign a confidentiality agreement), a court should order production of a hard drive mirror image for inspection.  *Accord Ameriwood*, 2006 WL 3825291, at *2.

defendant's computer because of "troubling discrepancies with respect to defendant's document production"); *GTFM, Inc. v. Wal-Mart Stores, Inc.*, No. 98 CIV 7724 (RPP), 2000 WL 335558, at *2-3 (S.D.N.Y. Mar. 30, 2000) (compelling production and inspection of electronic information where a party failed to comply with its discovery obligations).

All of the circumstances under which courts grant inspection of electronically stored information are present here:  (1) Electronic evidence is crucial to the fraud Chevron seeks to prove because Page conducted much of his work by email; (2) many discrepancies or inconsistencies exist in the Page's productions; and (3) Page has failed to produce relevant information as established above.  *See Osrecovery Inc. v. One Groupe Int'l.*, No. 02 CIV 8993 (LAK), 2003 WL 2004534, at *1 (S.D.N.Y. Apr. 16, 2003) (Kaplan, J.); *see also Robinson v. City of Arkansas City, Kansas,* No. 10–1431–JAR–GLR, 2012 WL 603576, at *17 (D. Kan. Feb. 24, 2012) ("Given [Defendant's] primary role in the events leading to this litigation, the failure to search his computers is inexcusable and inexplicable.  To remedy such discovery transgressions, the Court may order production of a mirror image of the relevant hard drives.").

Page's employer, Donziger, was required in the § 1782 action seeking discovery from him to produce his computer hard drives and other electronic storage media for forensic examination, based on his failure to produce documents responsive to Chevron's discovery.  As it has done here, Chevron compared Donziger's production to the document productions from other § 1782 actions, and Chevron discovered hundreds of important emails that Donziger should have produced but did not.  Judge Kaplan specifically noted that hard drive production was justified given the absence of "a good many relevant documents that were originated by or sent to Donziger that have been produced by others pursuant to subpoenas in other proceedings."  *See In re Chevron Corp.*, No. 1:10-mc-00002-LAK, Dkt. 171 at 2 (S.D.N.Y. Jan. 21, 2011).  The

subsequent forensic imaging of Donziger's hard drives resulted in Chevron uncovering thousands of responsive emails that Donziger had withheld from production. The circumstances here warrant the same results.

### III.    The Court Should Order Page to Sit for Additional Court-Supervised Deposition Time in the Page 1782 Action

The transcript of Page's deposition makes clear that additional Court-supervised deposition time is necessary. Page's behavior prevented Chevron from obtaining the reasonable discovery to which it is entitled. Page went to extraordinary lengths to obstruct Chevron's deposition, refusing to answer questions on alleged privilege grounds that could not possibly have been asserted in good faith, given the extensive waivers of privilege that have already occurred and the crime-fraud rulings that already have been rendered. Page also insisted on making nonresponsive comments to waste deposition time. His repeated use of that tactic alone warrants granting Chevron additional time to examine Page.

Absent supervision (directly or through a Court-appointed officer), any additional deposition time that the Court grants will only result in similar non-responsive answers, long-winded objections, and outright refusals to answer on the basis of privileges long ago waived. *See E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. 45, 55 (E.D. Va. 2010) (ordering depositions to be court-supervised where "the record foretells that privilege issues are going to arise during the depositions"). Additional instructions to Page outside the context of his actual deposition are not sufficient, given that even the Court's mid-deposition intervention did not remedy Page's behavior. And Page's intent to continue his obstructionist behavior is borne out by Page's own statements at the end of his deposition, when he stated that "you're not going to get what you want out of another 30 hours." Barrett Decl., Ex. Y at 265:6-7 (Transcript).

Finally, Page was on notice that his behavior during deposition could lead to additional

time.  Dkt. 79-2 at 15:25-16:6 (June 18, 2013 Telephone Conference Hearing Transcript) ("He can take the six hour Deposition, be done with it, *unless there is some problem with responsiveness during the Deposition*.  Or I will cut it down to five hours but give him the opportunity to petition the Court for more hours based *upon the conduct in the Deposition* and subject matter that he thinks is uncovered.") (emphases added).

Accordingly, Chevron respectfully requests an order for additional Court-supervised deposition time in the Page 1782 proceedings.

## CONCLUSION

For the reasons set forth herein, Chevron respectfully requests that the Court:  (1) hold Page in contempt of this Court's orders requiring him to produce all responsive documents to Chevron; (2) impose appropriate sanctions, including attorneys' fees; (3) compel Page to produce his hard drives and electronic media storage devices for imaging and inspection by a digital forensics expert; and (4) compel Page to sit for additional deposition time in a Court-supervised setting.

Dated:  September 30, 2013                          Respectfully submitted,

                                                             /s/ Peter E. Seley
                                                             Peter E. Seley
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., N.W.
Washington, DC 20036
Telephone:  202.955.8500
Facsimile:  202.955.9594

*Attorneys for Chevron Corporation*

*Of Counsel:*

Randy M. Mastro, Esq. (*pro hac vice*)
Andrea E. Neuman, Esq. (*pro hac vice*)
Gibson, Dunn & Crutcher, LLP

200 Park Avenue, 47th Floor
New York, NY 10166-0193
Tel:  (212) 351-4000
Fax:  (212) 351-4035
Email:  RMastro@gibsondunn.com
Email:  ANeuman@gibsondunn.com