**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CHEVRON CORPORATION, | |
| Petitioner | Civil Action No. 11-CV-00395 |
| To Issue Subpoenas For the Taking of Depositions and the Production of Documents. | |

**CHEVRON CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR
AN ORDER HOLDING AARON MARR PAGE IN CONTEMPT,
COMPELLING THE PRODUCTION OF HIS HARD DRIVE AND
REQUIRING ADDITIONAL COURT-SUPERVISED DEPOSITION TIME**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

ARGUMENT ............................................................................................................................... 1

I.   Chevron's Meet-and-Confer Efforts Satisfied All Applicable Local Rules,  as Page's
     Persistent Bad Faith Rendered Futile Any Additional Efforts ............................................... 1

II.  The Court Has the Power to Sanction Page under Rule 37 ................................................... 2

III. Page's Conduct Satisfies the Elements of Civil Contempt ..................................................... 3

IV.  The Production of Page's Hard Drive Is a Standard and Warranted Remedy ....................... 6

V.   Page's Deposition Conduct Warrants Additional Court-Supervised Deposition Time ........ 11

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Accord Renaissance Nutrition, Inc. v. Jarrett,*
  747 F. Supp. 2d 374 (W.D.N.Y. 2010) ...................................................................... 13

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,*
  10-CV-03428-LHK, 2012 WL 70428 (N.D. Cal. Jan. 9, 2012) ................................ 8

*Chevron Corp. v. Sheffz,*
  754 F. Supp. 2d 254 (D. Mass. 2010) ........................................................................ 2

*Gibbons v. Smith,*
  01 CIV. 1224 (LAP), 2010 WL 582354 (S.D.N.Y. Feb. 11, 2010) .......................... 2

*In re Application of Michael Wilson & Partners, Ltd.,*
  No. 06-cv-02575-MSK-KMT, 2011 WL 3608037 (D. Colo. Aug. 16, 2011) .......... 2

*In re Application Pursuant to 28 U.S.C. § 1782 for an Order*
*Permitting Christen Sveaas to Take Disc.,*
  249 F.R.D. 96 (S.D.N.Y. 2008) .................................................................................. 2

*John B. v. Goetz,*
  531 F.3d 448 (6th Cir. 2008) ...................................................................................... 9

*LaPlante v. Estano,*
  226 F.R.D. 439 (D. Conn. 2005) ............................................................................... 13

*Pandora Jewelry, LLC v. Chamilia, LLC,*
  CIV. CCB-06-3041, 2008 WL 4533902 (D. Md. Sept. 30, 2008) ........................... 1

*Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.,*
  254 F.R.D. 238 (E.D. Pa 2008) .................................................................................. 7

*Romanyk Consulting Corp. v. EBA Ernest Bland Assocs., P.C.,*
  No. AW-12-2907, 2013 WL 3280030 (D. Md. June 26, 2013) ................................ 1

*White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.,*
  CIV.A. 07-2319-CM, 2009 WL 722056 (D. Kan. Mar. 18, 2009) ........................... 8

*Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.,*
  280 F.R.D. 681 (S.D. Fla. 2012) ................................................................................ 9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Statutes**

28 U.S.C. § 1782 .................................................................................................................... 2

**Rules**

Fed. R. Civ. P. 30 .......................................................................................................... 11, 13

Fed. R. Civ. P. 37 .............................................................................................................. 13

Chevron Corporation ("Chevron") respectfully submits this reply memorandum in further support of its Motion for an Order Holding Aaron Marr Page in Contempt, Compelling the Production of his Hard Drive and Requiring Additional Court-Supervised Deposition Time. Chevron has been trying to obtain discovery from Page since *2011*. He has had more than enough time to understand the scope of discovery at issue and to collect, review and produce all responsive materials. Page, however, has sought to delay and thwart the Court-ordered discovery at every turn. His response to Chevron's present motion is no different.

## ARGUMENT

Page's opposition seeks to convince this Court that he has acted in "good faith" in responding to Chevron's document requests and deposition questions. The record, however, contains ample evidence to support an order by the Court finding Page in contempt and requiring him to produce his hard drive and sit for a Court-supervised deposition.

## I.     Chevron's Meet-and-Confer Efforts Satisfied All Applicable Local Rules, as Page's Persistent Bad Faith Rendered Futile Any Additional Efforts

Page argues at the outset that Chevron's motion should be denied because it did not satisfy meet-and-confer obligations under the Court's Local Rules. This is not so. Chevron's motion (Mot. at 8-10) "adequately details the steps [Chevron] took to cooperate with [Page] and the futility of any further attempts." *Pandora Jewelry, LLC v. Chamilia, LLC*, CIV. CCB-06-3041, 2008 WL 4533902, at *6 (D. Md. Sept. 30, 2008). As the record makes clear, Chevron complied with the Local Rules via its "extensive efforts to resolve the discovery dispute informally through letters, email, and telephonic meet and confers." *Romanyk Consulting Corp. v. EBA Ernest Bland Assocs., P.C.*, No. AW-12-2907, 2013 WL 3280030, at *2 (D. Md. June 26, 2013) (Day, M.J.). Given that the parties' "positions are sufficiently entrenched," any further efforts to confer would be futile. *Id. Accord Gibbons v. Smith*, 01 CIV. 1224 (LAP), 2010 WL

582354, at *2 (S.D.N.Y. Feb. 11, 2010) ("[M]any courts have recognized that the meet-and-confer requirement is not a prerequisite to addressing the merits of a discovery motion and that it may be excused where the meet-and-confer would be futile.").

In arguing that Chevron "failed" to confer, Page ignores the weeks of phone and email efforts by Chevron to address Page's document production deficiencies, and glosses over the fact that, after making no progress, Chevron informed Page that it would file a motion due to the futility of the meet-and-confer efforts.  *See* Dkt. 85-19, at 2.  Also, Page's own words during his deposition confirm that any effort by Chevron to request additional deposition time from him would be equally pointless:  "Obviously we'll be resisting any additional time."  *See* Dkt. 85-27, at 64.

## II.    The Court Has the Power to Sanction Page under Rule 37

Notwithstanding Page's attempt to circumscribe the Court's authority here, the Federal Rules of Civil Procedure—including the sanctions provisions of Rule 37—govern Section 1782 discovery proceedings.  *See* 28 U.S.C. § 1782(a) (explicitly invoking Federal Rules of Civil Procedure); *see also Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 264 (D. Mass. 2010); *In re Application Pursuant to 28 U.S.C. § 1782 for an Order Permitting Christen Sveaas to Take Disc.*, 249 F.R.D. 96, 99, 108 (S.D.N.Y. 2008) (granting in part petitioner's motion under Rule 37 to compel production of certain materials pursuant to order entered in connection with petitioner's Section 1782 application); *In re Application of Michael Wilson & Partners, Ltd.*, No. 06-cv-02575-MSK-KMT, 2011 WL 3608037, at *3 n.1 (D. Colo. Aug. 16, 2011) ("[D]iscovery in a section 1782 action is governed by the Federal Rules of Civil Procedure.  Under Rule 26, the court is vested with considerable discretion to specify conditions and limits for discovery, particularly electronic discovery, and has sanction power under Rule 37.") (internal citation omitted).

While Page concedes that Rule 37 sanctions are available in the "court where the action is pending," he argues that this case should be viewed as pending in either New York or abroad. Opp. at 21. This novel interpretation of the federal rules makes no sense. Chevron's efforts to obtain discovery *for use* in a foreign tribunal does not change the fact that its Section 1782 application was made to—and is pending in—*this* Court. In short, the Court has the power to sanction Page pursuant to Rule 37 for his disregard of the Court's discovery orders.

### III.      Page's Conduct Satisfies the Elements of Civil Contempt

Page argues that he cannot be charged with civil contempt because "Chevron does not even articulate what order it thinks Mr. Page violated." Opp. at 24 (emphasis in original omitted). Chevron's motion, however, makes clear that Page has violated three orders of the Court: two discovery orders (dated August 31, 2011 and January 25, 2013) directing Page to produce documents, and the June 18, 2013 order requiring him to sit for five hours of deposition. *See* Mot. at i, 1, 2, 3, 10, 11, 12, 17.

There is overwhelming evidence that Page defied the Court's document production orders, and certainly enough to warrant a finding of contempt. For example, on June 18, 2013, Page represented to the Court that his document production was complete. Dkt. 79-2, at 8:17-18. Chevron subsequently discovered that Page's production had numerous deficiencies and sought to resolve the issue without involving the Court. Mot. at 4-8. During these discussions, Page committed to search his hard drive using a number of search terms and later acknowledged that he found additional responsive documents as a result of running certain searches. Dkt. 85-19, at 4. *Nearly five months later, however, Page still has yet to produce those "newly discovered" documents*.

Rather than cure his acknowledged document production deficiencies, Page has sought to re-initiate discussions about the scope of Chevron's requests. Opp. at 4, 13; Dkt. 85-19, at 2.

3

But defining the scope of Chevron's requests in this action was an exercise that the parties engaged in immediately after the Court ordered Section 1782 discovery from Page.  Dkts. 55, 55-1 (Joint status report filed on February 4, 2013).  Page's attempt to reargue the scope of the requests at this late date is a further attempt to frustrate further the Court-ordered discovery sought by Chevron.[1]

Page also offers other excuses for his failure to comply with the document requests, including that the issues arise because he did the production himself (Opp. at 5) and that he could have done a better job if Chevron had paid for a vendor to review the documents (*id.* at 5-6).  Neither excuse is relevant to the issue of whether Page complied with this Court's orders, and, in any event, neither has merit.

**_Page did not conduct his document review by himself._**  Page continues to blame his production issues on having to conduct the document review by himself.[2]  Opp. at 5.  That representation is misleading at best.  The review of his documents in 2011, pursuant to the RICO subpoena, was not conducted by Page, but rather, by his counsel.  Ex.[3] B (email from C. Gowen detailing 2011 review efforts of Page's counsel); Ex. C (email from C. Gowen referring to vendor who conducted review in 2011).  Page also had help during the 2013 portion of his

---

[1]  Page's argument that the scope of the RICO subpoenas was still in flux (Opp. at 12-13) is unavailing.  In the RICO proceeding, Page objected to Chevron's requests and Chevron offered to meet and confer with him.  Barrett Decl., Ex. A.  That offer was never accepted.  And Page confirmed to this Court on June 18, 2013, that he had "produced to Chevron all documents in his possession, custody or control that are responsive to the RICO subpoenas *as written*."  Dkt. 79-2, at 9:18-24 (emphasis added).

[2]  On January 25, 2013, Page's counsel told this Court that Page was doing his document review by himself.  Dkt. 57-11, at 30:14-15.  Page's counsel made that representation to the Court again on February 27, 2013 (Dkt. 63-9, at 22:12-14, 40:11-14) and on June 18, 2013 (Dkt. 79-2, at 8:25).

[3]  All "Ex." cites refer to exhibits to the Declaration of Claudia M. Barrett, filed herewith.

document review from the law firm of Patton Boggs.[4]  In the midst of the document production process, Page's counsel told Chevron that "we are all, ***including Patton Boggs***, dedicating significant efforts to get you the responsive documents you are entitled to under the magistrate's order as quickly as possible."  Ex. E (emphasis added).

       ***Chevron offered to pay for a vendor but Page refused.***  Page also claims that his review would have been quicker and more complete if Chevron had paid for Page to retain a vendor to review the documents, but that Chevron "refused."  Opp. at 5-6.  Page again mischaracterizes what actually occurred.  Page raised the issue in a brief and then before this Court during the January 25, 2013 and February 13, 2013 hearings in this action.  The Court denied both requests, finding no need for cost shifting based on the present record.  Dkt. 57-11, at 74:5-15 (Jan. 25, 2013); Dkt. 63-9, at 39:21-43:7 (Feb. 27, 2013).  Subsequently, and despite the fact that it had no obligation to do so, Chevron offered to pay for a vendor to review Page's documents, and further offered to enter into a Rule 502 order to alleviate any privilege or confidentiality concerns Page might have.  *See* Ex. F.  Page refused Chevron's offers of assistance.  *See* Barrett Decl. ¶ 5.  Chevron renewed its offer to pay for a vendor during negotiations regarding Page's document deficiencies, but Page ignored the offer.  Dkt. 85-19, at 3 ("We have offered to do that review for you and to enter into a protective order so non-responsive items are protected.").

       There is substantial evidence that funding is available for the defense of the Lago Agrio Plaintiffs ("LAPs") and their counsel.  *See* Mot. at 8 n.10 (citing Judge Lewis A. Kaplan from

---

[4]  Regardless of the amount of assistance Page received, the production should have been only a minimal effort in any event.  The 2011 review and subsequent production consisted of almost all of Page's Ecuador file.  Ex. D ("In short, Chevron has sought the entirety of the Pages' case file totaling approximately 2,000 documents.").  Accordingly, many of Page's documents responsive to the Section 1782 requests were identified, collected and reviewed in the summer of 2011, approximately 18 months before this Court granted the Section 1782 application.  Any additional review should have been only an incremental "burden."

the Southern District of New York regarding the behind-the-scenes funding of the RICO and

action).  But even assuming, *arguendo*, that funding was an issue, Chevron offered to conduct

the review itself and enter into a 502 order covering non-responsive documents, an offer that

renders irrelevant Page's excuses for failing to produce all responsive documents.

Other examples of Page's bad faith conduct throughout his document production process

abound, including:

- Waiting almost **three weeks** after this Court ordered production on January 25, 2013, before even beginning to review documents collected and reviewed in 2011 (Barrett Decl. ¶ 2);

- Waiting **five weeks** after this Court ordered production to begin to review documents collected after the initial 2011 effort (*id.* ¶ 3);

- Withholding responsive documents from production as leverage in an improper effort to obtain Chevron's agreement not to use them (Ex. B);

- Failing to make weekly rolling productions (Dkt. 85-4; Barrett Decl. ¶ 4, Ex. F);

- Declining to commit to a date for completing his production (Dkt. 85-4); and

- Refusing to confirm that his production was complete until forced to do so by the Court (Dkt. 79-2, at 8:17-18).

## IV.    The Production of Page's Hard Drive Is a Standard and Warranted Remedy

Page argues that hard drive production should only be used when there is evidence of

documents being deleted or *withheld from production*.  Opp. at 28.  Chevron agrees.

Here, Page readily admits that he withheld documents from production—and indeed,

continues to withhold documents from production.  Opp. at 1, 6-7, 10-11.  He argues instead that

Chevron's calculation of the number of missing documents in his production is exaggerated.

Opp. at 8.  Page's argument, however, assumes that Page need only produce the last email in a

chain of messages.  That was not the instruction given in the subpoena.  *See* Dkt. 13 at 46 ("A

draft or non-identical copy is a separate document within the meaning of this term

['Document']").  And given that allegations of fraud feature prominently in both the Treaty

Arbitration and in the Ecuadorian litigation, every responsive email, not merely the latest email

purportedly capturing a chain, should be produced.  *See Rhoads Indus., Inc. v. Bldg. Materials*

*Corp. of Am.*, 254 F.R.D. 238, 239 n.1 (E.D. Pa 2008) ("One important characteristic of email . .

. is that a prior email message can be manipulated.  For example, the person receiving an email

message can, in replying or forwarding to any person, delete the identity of other senders or

recipients, or only include part of the message.").  Further, even if overlapping chain emails are

not counted, there remain hundreds of emails to and from Page in Donziger's production that

Page failed to produce—and those are only the emails of which Chevron is aware.[5]

      Page next suggests that Chevron already has "all or substantially all of the documents it

alleges were not produced" from Donziger, and therefore did not suffer the harm required for

civil contempt.  Opp. at 25.  Beyond the substantial time and effort expended by Chevron to

obtain these documents and cross-check them, Page's suggestion also ignores that Chevron is

entitled to all Page's responsive documents—not just the documents that Chevron happens to be

aware of based on Donziger's production.  Chevron is entitled to all the documents that this

Court has ordered be produced, and not merely to those that Page thinks worth producing or

those that Chevron already has from another source.

      Finally, Page attempts to paint as "extreme" the requested remedy of his hard drive

production.  Opp. at 26.  Courts, however, routinely require the production of computer

equipment, particularly when a party is unwilling or unable to conduct a search of computer

---

[5]  Page tries to excuse his deficiencies on inadvertent errors which he says can be as high as
50%.  Opp. at 7.  If indeed Page's review resulted in such a high error rate, it further supports
Chevron's motion to obtain Page's hard drive and have a thorough review conducted.

systems to produce the relevant information.[6]  Mot. at 14-15; *see also White v. Graceland Coll.*

*Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, CIV.A. 07-2319-CM, 2009 WL 722056, at *7 (D.

Kan. Mar. 18, 2009) ("[M]any courts now consider requests for inspection or requests for

forensic or mirror imaging of computers to be neither routine nor extraordinary . . . [C]ourts have

also compelled production based upon discrepancies or inconsistencies in a response to a

discovery request or the responding party's unwillingness or failure to produce relevant

information."); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 10-CV-03428-LHK, 2012

WL 70428, at *3 (N.D. Cal. Jan. 9, 2012) ("Brocade has shown that 'serious questions exist both

as to the reliability and the completeness of materials produced in response to these discovery

requests' by A10.  Thus, a forensic inspection of Mr. Szeto's hard drives is justified.") (citation

omitted).

Indeed, more than one court has ordered production of hard drives in related Section

1782 actions.  In the action Chevron brought against Steven Donziger in the Southern District of

New York—an action also brought pursuant to 28 U.S.C. § 1782—Judge Kaplan ordered

Donziger to produce his hard drive to Chevron due to Donziger's repeated discovery failings.

Ex. G (*In re Chevron*, No. 10-mc-00002 (LAK), Dkt. 171 (Jan. 21, 2011)).  Similarly, in a

related action brought by Chevron against William Powers in the Southern District of California,

the court ordered imaging of Powers's hard drive, including the production of deleted emails and

metadata, and ordered additional deposition time, based on Powers's failure to preserve relevant

emails.  Ex. Q (*In re Chevron*, No. 10cv1146-IEG (WMc), Dkt. 107 (Feb. 11, 2011)).

---

[6]  While Page attempts to cast himself as a "third party," he in fact is *a party* to this
Section 1782 action.  Even if this were a simple Rule 45 third-party proceeding, however,
there is nothing in the rules or any case law prohibiting this remedy when the conduct is as
egregious as Page's has been here.

Requiring Page to turn over his hard drive will not constitute an invasion of privacy, as Page insinuates.  Opp. at 33.  As an initial matter, Chevron has no interest in any documents that are not responsive to Chevron's discovery requests and has offered to enter into a Rule 502 order governing any such documents.  Moreover, in the context of privacy concerns, "[t]he scales tip in favor of compelling forensic imaging" when the responding party fails to produce the requested information.  *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687, 688 (S.D. Fla. 2012) (granting motion to compel forensic imaging where respondents were "unwilling or unable to conduct a search of their computer systems" for documents responsive to discovery requests).[7]

Although Page maintains he "is not accusing Chevron of having any actual plans or attempts to pressure or intimidate him"[8] (Opp. at 32), the three pages that Page devotes to maligning Chevron and its so-called "strategy of reprisal and intimidation" (*id.* at 29-32) belie that statement.  Page provides statements from some of the legal filings of entities with former

---

[7]   And even *Goetz*, the Sixth Circuit case Page cites for the general proposition that forensic imaging may raise privacy concerns, supports Chevron's position.  *John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008).  Recognizing that "forensic imaging is not uncommon in the course of civil discovery," the Sixth Circuit set aside the district court's order because it ordered the forensic imaging predominately to "preserve relevant electronic evidence" even though there was no indication that Defendants would not preserve such information on their own.  *Id.* at 459-60.  And although the forensic imagining at issue would "almost certainly contain confidential state or private personal information that is wholly unrelated to the litigation," the Sixth Circuit made clear that "the risk of improperly exposing such information, standing alone, might not preclude the employment of forensic imaging in all cases. . ." *Id.* at 460.  Here, Chevron seeks an order not to preserve the information on Page's computer, but as a last resort to obtain it.  Page has waived whatever privacy arguments he might have by refusing, time and time again, to comply with the Court's orders.

[8]   Page also complains about Chevron's consultants at Stroz Friedberg conducting the hard drive imaging, referring to them as "experts" of "highly uncertain independence."  Opp. at 3.  Stroz Friedberg is a respected national company and there is no evidence in the record that it has done or would do anything improper for Chevron or that its work for Chevron has been anything other than objective and professional.

ties to the LAPs, conveniently failing to mention that these entities—as well as many others—have since come forward on Chevron's behalf to tell the truth about the LAPs' conduct.

Douglas Beltman, the former Stratus Executive Vice President who "oversaw and managed the [Ecuador] project" at Donziger's direction, admitted in a sworn declaration that Stratus ghostwrote the Cabrera Report and stated that he "disavow[ed] any and all findings and conclusions" in the Cabrera report.  Ex. H at ¶¶ 47, 76.  Similarly, Stratus Managing Scientist Ann Maest stated in a sworn declaration that she "deeply regret[ted] that [she] allowed [herself] to be used in the Lago Agrio litigation in the way [she] was."  Ex. I at ¶ 50.  Stratus President and CEO Joshua Lipton testified during the RICO trial in New York stating that Stratus was taking steps "to ensure that the events that occurred during the Ecuador project will never be repeated."  Ex. J at ¶¶ 34, 39.  Burford CEO Christopher Bogart testified on Chevron's behalf during the RICO trial, stating: "We simply do not countenance in any way the kind of behavior that this Court has already found has occurred in this matter and we never would have invested in it in the first place had we been aware of its existence."[9]  Ex. K at ¶ 3.  What Page criticizes as a nefarious "strategy" is, in actuality, a decision by a number of entities formerly associated with the LAPs to come forward and expose the LAPs' fraud.

---

[9]  Other former associates of the LAPs have also testified about the fraud.  Jeffrey Shinder, an attorney retained by Donziger in connection with the Stratus 1782 action, testified at the RICO trial that when he interviewed Beltman about his Ecuador work, he found Beltman's admissions about the Cabrera fraud to be "shocking."  Ex. L at 1292:22-1293:9.  And Donziger's former interns testified at deposition that Donziger misled them regarding his fraudulent conduct.  Ex. M at 309:15-310:15 ("At various points I did feel misled [by Donziger].");  Ex. N at 203:16-204:1 (testifying that Donziger kept him in the dark about key aspects of the scheme, including by failing to tell Woods that he had instructed Stratus not to reveal it had written the Cabrera report).

**V.     Page's Deposition Conduct Warrants Additional Court-Supervised Deposition Time**

When this Court ordered Page to sit for a five-hour deposition, it rejected Page's request

for a three-hour examination because "there were some problems, at least in the prior Deposition,

of responsiveness," and stated that it would "give [Chevron] the opportunity to petition the Court

for more hours based upon the conduct in the Deposition."  Dkt. 79-2 at 16:3-15.  Despite being

put on notice regarding his conduct, Page nonetheless proceeded to do everything in his power to

waste time and avoid answering proper questions during his deposition.  Mot. at 8-10.

Page claims his conduct was simply the result of caution.  Opp. at 14-15.  Using one

example, he argues that his refusal to respond to one simple question—"Was there a time when

you were coordinating with Winston & Strawn counsel for the Republic as counsel for the

Ecuadorian plaintiffs?"—was in good faith.  A reading of the transcript shows otherwise.  During

that particular exchange, Page claimed not to understand the phrases "*coordinating with*" and

"*work with*."

Also, Page's speeches at his deposition were more than mere objections, as he would

have this Court believe (Opp. at 18), and violated Rule 30(c)(2)'s requirement that objections "be

stated concisely in a nonargumentative and nonsuggestive manner."  Fed. R. Civ. P. 30(c)(2).  In

the example to which Page refers in his brief, Chevron asks a question regarding a subject matter

whose privilege was long-ago waived:  "Did you make any inquiries of the Ecuadorian lawyers

in January 2010 of the extent or nature of their contacts with Richard Cabrera?"  Dkt. 85-27, at

78:3-6.  The LAPs' counsel objected in the proper manner:  "Objection, privileged."  *Id.*

at 78:7-8.  Page then added the following statement:

> And I'll qualify this answer and the prior answer.  Without revealing any, you
> know, client confidential information or communications or any attorney work
> product, I believe I can answer the question and simply say I do not recall any
> such investigation or any such discussion.

Dkt. 85-27 at 78:9-17.  When Chevron's counsel asks Page not to make unnecessary speeches, Page launched into an extraneous monologue about protecting privilege despite the fact that any privilege surrounding Cabrera already had been waived long ago:

> I'm not sure if I can do that, Andrea.  I would like to be able to do that but part of the problem here is the waiver issue that we're dealing with, and I've asked on the record for assurances that would help me provide testimony today without effecting waiver.  Again, if I can get some sort of assurances on the record, then maybe we can be more efficient on this but otherwise I need to be as careful as possible obviously to protect the confidences that have been entrusted to me by my clients.

*Id.* at 78:23-79:12.  And when Chevron's counsel explained that "there's already been a waiver and crime-fraud finding on both the Cabrera report and the cleansing report so there's no applicable privilege objection" (*id.* at 79:13-16), Page responded with another speech:

> Then we're going to start getting into a legal discussion about the scope of that finding, and obviously what we're talking about here is the drafting of a document.  This is a legal document that has nothing, you know, we're going to get it back into these issues of what the scope of the waiver is and what my risk is as far as what my testimony might accomplish as far as subject matter waiver and this is what makes it difficult.  So I'm, to be frank, going to have to continue to try to stick to the lines here unless I get some sort of clarification from you that we can move in a different direction.

*Id.* at 79:17-80:8.  Page employed similar tactics many more times throughout the five-hour deposition.  *See, e.g.*, Ex. O at 31:22–32:12; 51:20–52:6; 56:20–60:4; 85:3–9; 125:3–130:3; 132:25–148:13; 160:5–165:5; 174:18–179:5; 201:3–203:15; 211:16–216:24; 261:3–263:4.

Page also claims that Chevron focused "largely on his mental impressions."  Opp. at 17, 19.  Again, the record reflects otherwise.  Most of the questions posed by Chevron's counsel focused on Page's factual knowledge of events at the time they occurred.  *See* Dkt. 85-27; Ex. O.

Finally, Page's reliance on Rule 37(a)(3)(B)(i) to avoid further deposition time is misplaced.  He claims that this Court can only order additional deposition time if Page was

evasive or gave incomplete responses.[10]  Opp. at 32-33.  Notwithstanding that Page in fact was evasive and gave incomplete responses, Rule 30—not Rule 37—governs Chevron's request here for additional deposition time[11]:  "The court must allow additional [deposition] time . . . if the deponent . . . impedes or delays the examination."  Fed. R. Civ. P. 30(d)(1); *see also Dow Chem. Co. v. Reinhard*, No. 07-12012-BC, 2008 WL 1735295, at *3, *5 (E.D. Mich. Apr. 14, 2008) (noting that the court "has an obligation to permit additional time, if the circumstances require that a fair examination of the deponent run longer" and granting a request to extend deposition for seven additional hours).  *Accord Renaissance Nutrition, Inc. v. Jarrett*, 747 F. Supp. 2d 374, 377-78 (W.D.N.Y. 2010) (granting three additional hours of deposition time based on document production deficiencies and rejecting deponent's argument that more time was unwarranted given deponent's 11 hours of testimony in related action); *LaPlante v. Estano*, 226 F.R.D. 439, 439-40 (D. Conn. 2005) (additional deposition time granted because deponent and his attorney were "recalcitrant and uncooperative in their refusal to answer questions that seek information which is clearly relevant, not privileged, not overly broad, and not unduly burdensome").

Ultimately, Page's claims of good faith and lack of understanding are not credible in view of the transcript and video of his deposition, which together reveal the full extent of his misbehavior.  *See* Mot. at 8-10; Dkt. 85-28 (DVD filed with the Clerk of the Court, containing video excerpts of Page's deposition); Ex. P (DVD filed with the Clerk of the Court, containing

---

[10]  Rule 37(a)(3)(B)(i) only applies to a situation in which a party is asking the court to compel responses to specific questions.  Here, however, Chevron simply is asking for additional deposition time.

[11]  Rule 30 also allows for sanctions when a party obstructs his testimony:  "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2).

additional video excerpts of Page's deposition).  In short, Page's own words and conduct compel additional court-supervised deposition time.[12]

## CONCLUSION

For the foregoing reasons, Chevron respectfully requests that the Court grant Chevron's motion and (1) hold Page in contempt of this Court's orders requiring him to produce all responsive documents to Chevron; (2) impose appropriate sanctions, including attorneys' fees; (3) compel Page to produce his hard drives and electronic media storage devices for imaging and inspection; and (4) compel Page to sit for additional deposition time in a Court-supervised setting once Chevron has had time to review any new documents produced by Page.

Chevron also respectfully requests that the Court deny Page's request that the Court conduct an evidentiary hearing to allow him to "testify as to the extent of his good faith efforts to work with Chevron on these subpoenas" (Opp. at 4) because such a hearing is unnecessary and is simply another attempt by Page to delay his production.

---

[12]  If the Court requires Page to sit for additional deposition time, Chevron respectfully requests that this Court or a court-appointed special master supervise any additional deposition of Page in order to ensure that Page does not impede his testimony again.  (Page does not address in his opposition this aspect of Chevron's request.)

Dated:  February 14, 2013                         Respectfully submitted,


                                                  /s/ Peter E. Seley
                                                  Peter E. Seley
                                                  Gibson, Dunn & Crutcher LLP
                                                  1050 Connecticut Ave., N.W.
                                                  Washington, DC 20036
                                                  Telephone:  202.955.8500
                                                  Facsimile:  202.955.9594

                                                  *Of Counsel:*

                                                  Randy M. Mastro, Esq. (*pro hac vice*)
                                                  Andrea E. Neuman, Esq. (*pro hac vice*)
                                                  Gibson, Dunn & Crutcher, LLP
                                                  200 Park Avenue, 47th Floor
                                                  New York, NY 10166-0193
                                                  Tel:  (212) 351-4000
                                                  Fax:  (212) 351-4035
                                                  Email:  RMastro@gibsondunn.com
                                                  Email:  ANeuman@gibsondunn.com

                                                  *Attorneys for Chevron Corporation*