# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHEVRON CORPORATION,

    Petitioner

To Issue Subpoenas For the Taking of
Depositions and the Production of
Documents.

Civil Action Nos. 11-CV-00395, 11-CV-01942

## CHEVRON CORPORATION'S OPPOSITION TO
## AARON PAGE'S MOTION FOR RECONSIDERATION

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539
*Attorneys for Chevron Corporation*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................3

ARGUMENT .............................................................................................................................6

I. Page's Motion Is Untimely. ............................................................................. 6

II. Page Has Failed to Show Any Circumstance That Would Justify
Reconsideration of This Court's Order. ............................................................ 7

III. Page Is Estopped From Relying on Delays He Caused to
Preclude Adjudication of Chevron's Motion for Contempt With
Respect to the RICO Subpoena. ....................................................................... 8

IV. The Court Retains Jurisdiction to Enforce Subpoenas and to
Sanction Page for Noncompliance. ................................................................. 11

V. The RICO Subpoena Remains Valid Notwithstanding the
Completion of the RICO Trial Proceedings. ................................................... 12

VI. The Cases on Which Page Relies Are Inapposite to the Present
Facts. ............................................................................................................... 14

CONCLUSION .......................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Zurich Ins. Co.*,
    667 F.2d 1162 (4th Cir. 1982) ................................................................. 8, 9, 10

*Ardrey v. United Parcel Serv.*,
    798 F.2d 679 (4th Cir. 1986) ....................................................................... 13

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
    2010 WL 3059344 (D. Md. Aug. 4, 2010) (Day, Mag. J.) ........................ 7

*Boyd v. Coventry Health Care Inc.*,
    828 F. Supp. 2d 809 (D. Md. 2011) ............................................................ 7

*Cent. Transp. Int'l, Inc. v. Gen. Elec. Co.*,
    2008 WL 4457707 (W.D.N.C. Sept. 30, 2008) ......................................... 13

*Central Wyoming Law Assoc. v. Denhardt*,
    60 F.3d 684 (10th Cir. 1995) ..................................................................... 16

*Classen Immunotherapies, Inc. v. King Pharmaceuticals, Inc.*,
    403 F. Supp. 2d 451 (D.Md. 2005) ........................................................... 13

*Clipper v. Takoma Park, Md.*,
    898 F.2d 18 (4th Cir. 1989) ....................................................................... 16

*Colleton Reg'l Hosp. v. MRS Med. Review Sys., Inc.*,
    866 F. Supp. 896 (D.S.C. 1994) ............................................................... 10

*Convertino v. U.S. Dep't of Justice*,
    684 F.3d 93 (D.C. Cir. 2012) .................................................................... 15

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) .................................................................................. 11

*Crouch v. City of Hyattsville*,
    2010 WL 4868100 (D. Md. Nov. 23, 2010) ............................................ 6, 7

*Ctr. Cadillac, Inc. v. Bank Leumi Trust Co. of New York*,
    1995 WL 662120 (S.D.N.Y. Nov. 9, 1995) ............................................. 14

*Dulce v. Dulce*,
    233 F.3d 143 (2d Cir. 2000) ...................................................................... 14

**Page(s)**

*EM Ltd. v. Republic of Argentina*,
  695 F.3d 201 (2d Cir. 2012),
  *cert granted* 187 L. Ed. 2d 701 (2014) ................................................. 14

*Fleming & Associates v. Newby & Tittle*,
  529 F.3d 631 (5th Cir. 2008) ................................................. 11

*Green v. Nevers*,
  196 F.3d 627 (6th Cir. 1999) ................................................. 15

*Guinness PLC v. Ward*,
  955 F.2d 875 (4th Cir. 1992) ................................................. 10

*Hager v. Graham*,
  267 F.R.D. 486 (N.D. W.Va. 2010) ................................................. 9, 10

*In re Matthews*,
  395 F.3d 477 (4th Cir. 2005) ................................................. 11

*In re Steinberg*,
  837 F.2d 527 (1st Cir. 1988) ................................................. 16

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
  146 F.3d 66 (2d Cir. 1998) ................................................. 12

*INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*,
  2014 WL 1908286 (D. Del. Apr. 25, 2014) ................................................. 11

*Jacobson v. Empire Elec. Contractors, Inc.*,
  339 F. App'x 51 (2d Cir. 2009) ................................................. 13

*Koehler v. Bank of Bermuda Ltd.*,
  12 N.Y.3d 533, 911 N.E.2d 825 (2009) ................................................. 14

*Libaire v. Kaplan*,
  760 F. Supp. 2d 288 (E.D.N.Y. 2011) ................................................. 14

*McCook Metals LLC v. Alcoa, Inc.*,
  249 F.3d 330 (4th Cir. 2001) ................................................. 12

*Mesmer v. Rezza*,
  2011 WL 5548990 (D. Md. Nov. 14, 2011) ................................................. 7

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Associates, Inc.*,
  872 F.2d 88 (4th Cir. 1989) ................................................. 11

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*NES Fin. Corp. v. JPMorgan Chase Bank, N.A.*,
    -- Fed. App'x --, 2014 WL 642673 (2d Cir. Feb. 20, 2014) ................................................. 12

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ................................................................................................ 8, 9

*Oklahoma Radio Assocs. v. F.D.I.C.*,
    3 F.3d 1436 (10th Cir. 1993) ................................................................................. 16

*Peacock v. Thomas*,
    516 U.S. 349 (1996) ................................................................................................. 14

*Potter v. Potter*,
    199 F.R.D. 550 (D. Md. 2001) ................................................................................. 7

*Saul Subsidiary I Ltd. P'ship v. Best Buy Stores, L.P.*,
    2009 WL 3348235 (D. Md. Oct. 15, 2009) ............................................................ 9

*United States v. Christo*,
    614 F.2d 486 (5th Cir. 1980) ................................................................................. 13

*United States v. Krane*,
    625 F.3d 568 (9th Cir. 2010) ................................................................................. 15

*United States v. Miller*,
    685 F.2d 123 (5th Cir. 1982) ................................................................................. 15

**Other Authorities**

Gowen Group Law office, *Report: Judge Kaplan Let Chevron Make
    "Mockery of Justice" in New York RICO Case*,
    http://chevrontoxico.com/news-and-multimedia/2014/0404-judge-
    kaplan-let-chevron-make-mockery-of-justice (April 4, 2014, last
    accessed June 19, 2014) ................................................................................. 16

**Rules**

D. Md. Loc. Rule 105.10 ................................................................................. 1, 6

Fed. R. Civ. P. 69 ................................................................................. 14

## PRELIMINARY STATEMENT

There is no question that this Court retains jurisdiction to enforce its orders, including the power to hold Aaron Marr Page in contempt for his refusal to fulfill his legal obligations in responding to properly propounded discovery requests. For the past three years, Page has done everything in his power to resist Chevron's discovery efforts, and his Motion for Reconsideration is yet another attempt to avoid holding him to account for his failure to comply with this Court's orders. Page asked for the contempt motion to be put over until after the RICO trial was completed, and the Court granted that request. Page is thus estopped from objecting to the timing of the present proceedings. And Page has repeatedly represented to this Court that he has fully complied with his discovery obligations, but, as this Court has already noted, there is reason to doubt the veracity of these representations. The process the Court has ordered will prove, once and for all, whether Page's conduct warrants sanctions, including contempt, as called for in Chevron's long-pending motion. Thus, Page's motion for "reconsideration" of an order this Court entered two months ago is too little, and too late. It should be denied.

*First*, Page's motion for reconsideration is untimely. The Court ruled that the November 28, 2012 subpoena at issue here (the "RICO Subpoena") should be included in the current review by FTI Consulting ("FTI") on April 22, 2014—six weeks before Page filed his motion. Page thus did not move to reconsider that April 22 ruling by the 14-day deadline required by Local Rule 105.10.

*Second*, Page's motion is a bare request for the Court to change its mind, without more. But a motion for reconsideration is proper only when there is a change in controlling law, when new evidence has come to light, or when it is needed to correct a clear error or to prevent a manifest injustice. Page's motion does not present any such evidence or need. Reconsideration therefore is not justified or appropriate.

*Third*, Page is estopped from relying on delays that he himself caused in order to avoid adjudication of Chevron's motion for contempt with respect to the RICO subpoena. Page asked this Court to wait until the end of the RICO proceedings to review the motion's merits, all the while giving assurances that he would engage in the substance of the motion after the completion of the trial. Now Page claims that because the trial has ended, he should not have to do so. But Page's previous assurances are binding on him and he should not be permitted to reverse his position in order to gain a tactical advance.

*Fourth*, the Court's ruling that it retained jurisdiction over all three of the subpoenas Chevron served on Page and that documents responsive to all three must be included in the current forensic exercise by FTI was correct. Page's compliance with the RICO Subpoena goes directly to Chevron's contempt motion, which is still pending before this Court. *See* Dkt. 85 (Chevron contempt motion); 4/22/2014 Hr'g Tr. at 55:12-13 (holding Chevron's motion for civil contempt "under advisement"). The Court retains jurisdiction to enforce its orders, including issuing sanctions for contempt, even after entry of a judgment or filing of an appeal. As the Court noted at the April 22 hearing: "I have had a number of occasions and cases where the discovery deadline has passed and I have ruled upon discovery violations, opened the door and allowed all kinds of things to occur. I don't think that divests this Court of jurisdiction." *Id.* at 7:13-17. The Court can determine finally whether Page has complied in good faith with his discovery obligations, and therefore make a fully informed ruling on Chevron's contempt motion, only if FTI's review encompasses documents responsive to all three subpoenas served on Page.

*Fifth*, the RICO Subpoena remains very much alive, notwithstanding the end of the RICO trial. The New York court's RICO judgment is currently on appeal, and there is thus the

potential for further proceedings on remand before the District Court. In addition, New York permits liberal post-judgment discovery to enforce a judgment, and potential enforcement proceedings before the district court may be necessary if the RICO Defendants ultimately fail to comply with the New York court's order. Finally, as this Court previously found, there is an "inherent overlap of materials" between the RICO Subpoena and the two other subpoenas in this action, including the subpoena issued to Page pursuant to 28 U.S.C. § 1782 which relates to the ongoing Treaty Arbitration at The Hague. 4/22/2014 Hr'g Tr. at 6:1-3.

Accordingly, for these reasons—each of which alone suffices to deny Page's motion— Chevron respectfully requests that the Court deny Page's motion for reconsideration and affirm its April 22 ruling.

## BACKGROUND

Chevron has sought discovery from Page since the summer of 2011, in the form of two subpoenas relating to a RICO trial in the Southern District of New York and a subpoena under 28 U.S.C. § 1782 to obtain discovery for use in foreign proceedings. Dkt. 85 at 1-3. From the outset, Page refused to produce responsive documents, and it was not until this Court stepped in to compel him to comply with the subpoenas that he even began, reluctantly, to do so. Nonetheless, Page has done, and continues to do, everything in his power to resist Chevron's efforts to obtain documents to which this Court has ruled it is entitled, such as the purposeful delay of his production. *Id.* at 3. On June 18, 2013, Page represented that he had "produced to Chevron all documents in his possession, custody or control that are responsive to the RICO subpoenas as written [including the RICO Subpoena at issue here] and responsive to the 1782 subpoena as modified by" this Court. *See* 6/18/2013 Hr'g Tr. at 9:18-24. After this representation, Chevron asked a forensic consultant to analyze Page's production to confirm that

the production was indeed complete. That analysis, however, showed that Page's production did not include at least hundreds of responsive emails that were sent to or from Page. Dkt. 85 at 4.

Chevron tried to resolve these deficiencies with Page (Dkt. 85 at 6-7), and agreed to delay his deposition until August 23, 2013, in order to find a resolution. Dkt. 79-6. The parties' efforts to resolve these issues without court intervention extended until at least September 19, 2013, with Page refusing to produce even those documents he conceded he should have produced, and failing to provide any explanation for his failure to produce many other documents. Recognizing the futility of its efforts, Chevron moved this Court on September 30, 2013 for contempt and sanctions against Page for his failure to comply with this Court's orders relating to the subpoenas issued by Chevron. *See* Dkt. 85 at 1-10 (detailing Page's repeated frustration of Court-ordered discovery in both the RICO and Section 1782 actions). Soon thereafter, Page sought to delay the resolution of that motion. On October 14, 2013, Page moved for a stay of proceedings, representing to the Court that "there is no reason why these issues must be decided now, on the eve of the RICO trial" and "Page looks forward to engaging with the Court on the substance of Chevron's allegations . . . . as soon as his obligations in the RICO trial are discharged." Dkt. 86. The Court granted Page's request and issued an order stating that "[d]iscovery in this matter is stayed until 7 days following the close of the RICO trial proceedings currently on-going in New York." Dkt. 89. Following the end of the RICO trial and post-trial briefing, the parties completed their briefing on Chevron's contempt motion on February 14, 2014. Dkts. 97, 98.

The Court held argument on Chevron's motion on April 22, 2014. At that hearing, Page asked the Court to "define the scope of this proceeding" and to determine whether "the RICO case is out of this hearing." 4/22/2014 Hr'g Tr. at 6:1-3. Denying Page's request, the Court held

both RICO subpoenas valid, including the RICO Subpoena that is the subject of Page's present motion, because "there is an inherent overlap of [RICO] materials here that flow over into the international 1782 litigation."[1]  *Id.*  The Court then granted Chevron's motion to compel production of Page's computers, electronic data devices and online accounts ("Electronic Storage"), ordering its imaging, forensic analysis and review, because it was "disturbed" by Mr. Page's "lack of time," by his "inability to do the kind of forensic work that is required of this case" and "by the specter of an incomplete production given the sheer volume of the documents that it would appear that he should have when compared to that of Mr. Donziger."  4/22/2014 Hr'g Tr. at 55:13-18.  Ultimately, the Court took Chevron's request for a finding of civil contempt "under advisement," reserving its decision on that aspect of Chevron's motion until after the completion of the forensic review of Page's Electronic Storage.  *Id*. at 58:12-22.  Page has raised the issue at least twice more before the present motion—his second and third bites at the apple—in a May 1 filing objecting to Chevron's proposed discovery process (Dkt. 115) and at a May 21 telephonic hearing at which the Court again denied his request, stating conclusively that the matter had been resolved on April 22.  Page subsequently filed this motion, asking the Court to review the issue yet again.[2]

---

[1]  Page ignores the Court's finding of "overlap" between the various subpoenas, instead claiming that the requests in the RICO Subpoena are only relevant to "Chevron's theory in the RICO case."  Page Br. at 4.  But those requests do indeed intersect with the other two subpoenas at issue in these proceedings and Page's attempt to consider them in a vacuum is naïve at best.

[2]  The RICO Subpoena is one of two subpoenas served by Chevron on Page which are related to Chevron's RICO trial in the Southern District of New York.  Notably, Page does not object to FTI reviewing and producing to Chevron documents responsive to the first RICO subpoena, issued on May 20, 2011.  Having essentially agreed that the use of the first RICO subpoena in the current FTI exercise is proper, Page is hard-pressed to argue the RICO Subpoena should not be used here, as there is no valid reason for Page to respond to one RICO subpoena but not the other.

## ARGUMENT

Page's motion for reconsideration can and should be denied on any one of five independent bases. First, Page's motion, filed six weeks after the Court's ruling on April 22 in violation of the Local Rules of this Court, is untimely. Second, Page has not presented any change in controlling law, new evidence or the need to correct a clear error or manifest injustice that would justify this Court's reconsideration of its decision. Instead, Page just asks this Court, without reason, to change its mind. Third, Page is estopped from arguing that the RICO Subpoena is moot due to the RICO trial's completion as it was he who assured the Court that he would consent to its addressing the merits of Chevron's motion after the RICO trial. Fourth, the Court retains jurisdiction over Page to enforce its order under its broad sanction power. And fifth, the RICO Subpoena at issue remains valid notwithstanding the end of the RICO trial. For the reasons stated herein, Chevron respectfully requests that the Court deny Page's motion.

## I.      Page's Motion Is Untimely.

"[A]ny motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order." Local Rule 105.10. Page's motion was filed on June 4, 2014, six weeks after the Court's April 22, 2014 order, is therefore untimely and should be denied. *See, e.g.*, *Crouch v. City of Hyattsville*, No. Civ. DKC-09-2544, 2010 WL 4868100, at *2 (D. Md. Nov. 23, 2010) (denying motion for reconsideration as untimely, pursuant to Local Rule 105.10, when motion was filed 28 days after the Court's order).

On April 22, this Court denied Page's request to exclude the RICO Subpoena from the review being conducted by FTI. Page, however, claims that this order was issued on May 21. That assertion is incorrect and, in fact, this Court admonished Page at the May 21 hearing for repeatedly raising the issue after the Court disposed of it on April 22:

> THE COURT: Why are we having this discussion? I thought that we had a ruling from the Court **back on April 22nd** as to the scope of Discovery, be it RICO, be it [Section 1782] or whatever. You have re-filed that in the Response and Objections that were made under ECF-115 and Chevron was right. **Your side keeps arguing something that I have already ruled upon**. Those issue are in play.

5/21/2014 Hr'g Tr. at 8:11-18 (emphases added); *see also id.* at 22:1-14 (same). It is thus clear that the Court ruled on this issue on April 22 and that Page should have filed any motion for reconsideration by May 6. Accordingly, Page's motion is untimely and should be denied on that basis alone. This Court's May 21 reference to the April 22 Order, which merely reconfirms its earlier ruling, does not permit Page another bite at the apple.

## II. Page Has Failed to Show Any Circumstance That Would Justify Reconsideration of This Court's Order.

"Rule 54(b) governs reconsideration of interlocutory orders that do not constitute final judgments in a case." *Crouch*, 2010 WL 4868100, at *2. "In the District of Maryland, reconsideration is appropriate only if it satisfies one of the three grounds: (1) a change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice." *Beyond Sys., Inc. v. Kraft Foods, Inc.*, No. Civ. PJM-08-409, 2010 WL 3059344, at *2 (D. Md. Aug. 4, 2010) (Day, Mag. J.) (citing *Potter v. Potter*, 199 F.R.D. 550, 552 n.1 (D. Md. 2001)). Relief on a motion for reconsideration "is rarely ever appropriate when the motion raises no new arguments, but merely requests the district court to reconsider a legal issue or to change its mind." *Boyd v. Coventry Health Care Inc.*, 828 F. Supp. 2d 809, 814 (D. Md. 2011) (internal quotations omitted); *Mesmer v. Rezza*, No. Civ. DKC-10-1053, 2011 WL 5548990, at *4 (D. Md. Nov. 14, 2011) ("A motion for reconsideration under Rule 54(b) may not be used merely to reiterate arguments previously rejected by the court."). Page's motion does not present any change in controlling law, does not introduce new evidence, and does not show that reconsideration is needed to correct a clear error of law or prevent manifest injustice.

Indeed, he makes only a passing reference, without more, to "clear error of law" and "manifest injustice." Page Br. at 4. Empty assertions unsupported by any evidence cannot justify reconsideration.

**III.    Page Is Estopped From Relying on Delays He Caused to Preclude Adjudication of Chevron's Motion for Contempt With Respect to the RICO Subpoena.**

Page seeks to avoid adjudication of his contempt related to Chevron's RICO Subpoena based on the argument that because the RICO trial is over, the subpoena is now "void" and this proceeding is "moot." But Page himself sought that precise delay by moving to stay Chevron's contempt motion until after the close of the RICO trial, a motion which the Court granted. Dkts. 86, 89. This Court should reject Page's efforts to gain an advantage from delays that he himself caused and procured. As the Fourth Circuit has held, "a party may properly be precluded as a matter of law from adopting a legal position in conflict with one earlier taken in the same or related litigation. 'Judicial estoppel' is invoked in these circumstances to prevent the party from 'playing fast and loose' with the courts, and to protect the essential integrity of the judicial process." *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982) (holding that party was estopped from asserting legal position regarding his employment relationship that conflicted with position successfully asserted in prior state court action). In other words, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (holding that party is estopped from arguing interpretation of a term differently than in prior consent decree).

"Courts have observed that '[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.'"

*New Hampshire v. Maine*, 532 U.S. at 750 (citing *Allen*, 667 F.2d at 1166). However, courts in this district generally look to three elements when determining whether judicial estoppel should be applied: (1) whether the party earlier took a different position; (2) whether the earlier inconsistent position was accepted by the court; and (3) whether the party intentionally misled the court to gain unfair advantage. *Saul Subsidiary I Ltd. P'ship v. Best Buy Stores, L.P.*, Civ. 08-930-JKS, 2009 WL 3348235, at *4 (D. Md. Oct. 15, 2009) (internal citation omitted) (holding party was estopped from arguing that sublease was unenforceable when it made conflicting argument in prior bankruptcy proceeding). A party's earlier inconsistent position can be "in the same or related litigation." *Allen*, 667 F.2d at 1166; *see also Hager v. Graham*, 267 F.R.D. 486, 497 (N.D. W.Va. 2010) (holding that party is estopped from taking a position inconsistent with one in its complaint). In addition, when considering whether the party "intentionally misled the court to gain unfair advantage," courts look to whether the prior inconsistent position "was based on inadvertence or mistake." *Saul Subsidiary*, 2009 WL 3348235, at *5.

Chevron filed its motion for contempt on September 30, 2013, before the start of the trial in the RICO action on October 15, 2013. On October 14, 2013, Page filed an emergency motion requesting that "the Court stay or continue any consideration of this motion and toll any deadlines associated with Chevron's motion until the end of the *Chevron v. Donziger* RICO trial," asserting that he was critical to the trial team's efforts. Dkt. 86 at 10 (Page Emergency Motion to Stay). Page further argued that Chevron would not suffer any prejudice from the stay: "Chevron has made no convincing showing of prejudice were this motion to be litigated and resolved after the RICO trial as opposed to in the middle of it." Dkt. 86 at 9. This Court accepted Page's arguments in granting the stay on October 17, 2013. Now, Page argues that the RICO subpoena is "void" and this proceeding "moot" precisely because the RICO trial is over.

Dkt. 130 at 1-2.  The elements of judicial estoppel are met because Page adopted an inconsistent position in his motion to stay, which was accepted by the Court when it granted the motion, and he did so in order to gain an unfair advantage in avoiding adjudication of Chevron's motion as to the RICO subpoena.  While prejudice to Chevron is not necessary to the application of estoppel, Chevron will be prejudiced if this Court accepts Page's change in position because aspects of its motion for contempt will be held untimely where they would not have been if Page had not sought a stay.  *Guinness PLC v. Ward*, 955 F.2d 875, 899 (4th Cir. 1992) (holding that party was estopped from raising alleged post-judgment settlement in enforcement proceedings after omitting it on appeal) ("[J]udicial estoppel . . . has been held to operate regardless of whether the prior inconsistent position was successfully maintained; and irrespective of reliance by, or prejudice to, the party invoking it.").  This is precisely the type of "intentional self-contradiction" that courts have held is subject to judicial estoppel.  *Allen*, 667 F.2d at 1167 (internal quotation and modification omitted); *see also Guinness PLC*, 955 F.2d at 899 ("A party cannot have its cake and eat it too . . . . [J]udicial estoppel, or preclusion against inconsistent positions, is designed to protect the integrity of the courts and the judicial process"); *see also Hager*, 267 F.R.D. at 497 (applying judicial estoppel to a party's "unfair tactics" when a party "attempt[ed] to change [an admission in its complaint] in effort to avoid discovery"); *Colleton Reg'l Hosp. v. MRS Med. Review Sys., Inc.*, 866 F. Supp. 896, 900-01 (D.S.C. 1994) (holding that plaintiff was estopped "from switching positions" when the party "took the opposite position . . . earlier in this litigation").  Accordingly, Page should be estopped from arguing that adjudication of Chevron's contempt motion as to the RICO subpoena is now "moot."

**IV.    The Court Retains Jurisdiction to Enforce Subpoenas and to Sanction Page for Noncompliance.**

"It is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). Specifically, this Court "may make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated."[3] *Id.*; *see also In re Matthews*, 395 F.3d 477, 481 (4th Cir. 2005) ("[A] district court retains jurisdiction to resolve collateral issues after an action is dismissed . . . such as awards of costs, attorney's fees, or sanction."); *Fleming & Associates v. Newby & Tittle*, 529 F.3d 631, 637-38 (5th Cir. 2008) ("[A] district court always has jurisdiction to impose sanctions designed to enforce its own rules, even after that court no longer has jurisdiction over the substance of a case."); *INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, No. Civ. 11-1007-SLR-CJB, 2014 WL 1908286, at * 1 n.1 (D. Del. Apr. 25, 2014) ("The Court retains jurisdiction to resolve motions for sanctions, including contempt sanctions (and related motions), even after the entry of Final Judgment or the filing of a notice of appeal, since the instant motions relate to matters collateral to the merits of the action."). Accordingly, this Court has authority to rule on Chevron's pending motion for contempt and sanctions against Page, regardless of the status of the RICO trial.

Page's purported compliance with Chevron's subpoenas goes directly to Chevron's pending motion for contempt. This Court ordered Page to turn over his Electronic Storage to FTI because the Court was "disturbed by the specter of an incomplete production." 4/22/2014 Hr'g Tr. at 55:15-16. Only by permitting FTI to search Page's Electronic Storage for documents responsive to all of Chevron's subpoenas—including the RICO Subpoena—will this Court be

---

[3]   "Rule 37(d) of the Federal Rules of Civil Procedure gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders," *Mut. Fed. Sav. & Loan Ass'n v. Richards & Associates, Inc.*, 872 F.2d 88, 92 (4th Cir. 1989), including this Court's orders regarding discovery related to the RICO action. Dkt. 85 at 1-10.

able to determine whether Chevron's contempt motion has any merit or, alternatively, whether Page did in fact comply with his discovery obligations. Thus, a complete analysis and review of Page's Electronic Storage, using all three subpoenas to identify responsive materials, is within this Court's continuing jurisdiction as it relates to the motion for contempt and the Court's inherent sanctions power.

## V. The RICO Subpoena Remains Valid Notwithstanding the Completion of the RICO Trial Proceedings.

The Fourth Circuit has held that "an ancillary court's power to issue and enforce subpoenas is entirely dependent upon the jurisdiction of the court in which the underlying action is pending." *McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330, 334 (4th Cir. 2001). The trial court in New York retains post-judgment jurisdiction in the underlying action, and therefore this Court also retains authority to enforce the RICO Subpoena. Although the RICO trial in New York is over, the trial court's judgment is currently on appeal at the Second Circuit, and the possibility of post-judgment discovery in aid of execution of that judgment remains. Therefore, discovery from Page in response to the RICO Subpoena is still relevant because Chevron may have further proceedings before the trial court in New York.

The New York court also has jurisdiction in the event of a remand by the Second Circuit. "The decision whether to hear additional evidence on remand is within the sound discretion of the trial court judge." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 73 (2d Cir. 1998). In the event that all or part of the RICO judgment is vacated and remanded to the District Court, those subsequent proceedings at the trial court may involve the consideration of additional evidence. *See, e.g.*, *NES Fin. Corp. v. JPMorgan Chase Bank, N.A.*, No. 13-7-CV, -- Fed. App'x --, 2014 WL 642673 (2d Cir. Feb. 20, 2014) ("On remand, the district court may consider whether to permit the parties to submit additional extrinsic evidence

in support of their positions."); *Jacobson v. Empire Elec. Contractors, Inc.*, 339 F. App'x 51, 56 (2d Cir. 2009) ("In carrying out these instructions on remand, the district court retains the discretion to hold a hearing, consider additional evidence, and refer the matter to a magistrate judge."). This is particularly so when evidence is not brought to light due to the recalcitrance or willful concealment of the opposing party, as has been the case here.

"[A] district court has wide latitude in controlling discovery." *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986). It is in the interest of efficiency for both Page and Chevron that the Court order compliance with the RICO Subpoena now—while FTI is running search terms and conducting its responsiveness review on Page's Electronic Storage—rather than to wait until the RICO appeal has been decided or until such as time when the RICO Defendants default on the New York order. 4/22/2014 Hr'g Tr. at 57:17 ("My point is that I am trying to fast track this."); *cf. Cent. Transp. Int'l, Inc. v. Gen. Elec. Co.*, No. 08-CV-136, 2008 WL 4457707, at *3 (W.D.N.C. Sept. 30, 2008) ("[B]ifurcation of discovery is the exception, rather than rule, and it is clear that in most instances, regular—that is, unbifurcated—discovery is more efficient."); *Classen Immunotherapies, Inc. v. King Pharmaceuticals, Inc.*, 403 F. Supp. 2d 451, 461 (D. Md. 2005) (bifurcation of discovery "would not further judicial economy"). Consistent with this Court's rulings, FTI's review and production of documents responsive to the RICO Subpoena will not burden Page, absent a finding of bad faith. 4/22/2014 Hr'g Tr. at 56:2-5 ("I will allow Chevron to purchase [discovery]. And I will reserve the right to shift the cost to Mr. Page in the event that a smoking gun or other indicia of bad faith surfaces.").[4]

---

[4] In addition, as the Fifth Circuit noted in a case cited by Page, noncompliance with a subpoena can be considered by a trial court upon remand. *United States v. Christo*, 614 F.2d 486, 495 n.10 (5th Cir. 1980) ("Since this case will be retried . . . . We trust that noncompliance with this subpoena or others will be promptly called to the attention of the trial judge in order that he may take remedial action.") (Page Br. at 3).

The New York court also has jurisdiction over any post-judgment enforcement proceedings. "As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to 'vindicate its authority, and effectuate its decrees.'" *Dulce v. Dulce*, 233 F.3d 143, 146 (2d Cir. 2000) (citing *Peacock v. Thomas,* 516 U.S. 349, 354 (1996)). "This includes proceedings to enforce the judgment." *Dulce*, 233 F.3d at 146. In the event that the RICO Defendants fail to abide by the RICO judgment, Chevron can seek to enforce that judgment in the district court. *See* Fed. R. Civ. P. 69(a)(1); *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 539-40, 911 N.E.2d 825 (2009) (Under New York law, "judgment debtors can be ordered to turn over out-of-state assets."). And pursuant to Rule 69, Chevron "may obtain discovery from any person" in aid of execution of the RICO Judgment, and "broad post-judgment discovery in aid of execution is the norm in federal and New York state courts." Fed. R. Civ. P. 69(a)(2); *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *cert granted* 187 L. Ed. 2d 701 (2014); *see also Libaire v. Kaplan*, 760 F. Supp. 2d 288, 293 (E.D.N.Y. 2011) (Rule 69(a) "permits wide latitude in using the discovery devices provided by the Federal Rules in post-judgment proceedings.") (internal quotations omitted)). Discovery in aid of enforcement of a judgment is permitted when the underlying judgment is pending appeal. *See Ctr. Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, No. 91 Civ. 7776 (CBM), 1995 WL 662120, at *2 (S.D.N.Y. Nov. 9, 1995) ("Because this judgment has not been stayed, defendants may continue with discovery in aid of the judgment pending appeal."). Again, it is in the interest of efficiency for FTI to include the RICO Subpoena in its ongoing responsiveness review of Page's Electronic Storage.

## VI.    The Cases on Which Page Relies Are Inapposite to the Present Facts.

Page's motion refers to the current proceeding as relating to "an incomplete discovery process or unresolved subpoena dispute," (Page Br. at 2), and then he cites to several cases to

argue that, with regard to ongoing discovery, a court is divested of jurisdiction once a trial has ended. Page's reliance on a handful of cases—none of which is binding on this Court—is unavailing as none of the circumstances in those cases is similar to the present proceedings.

Two of the cases Page cites are distinguishable on the facts. In *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93 (D.C. Cir. 2012), in reversing an order from the D.C. District Court on the plaintiff's motion to stay under Fed. R. Civ. P. 56(f), the D.C. Circuit stated that the plaintiff should have been granted a stay of summary judgment proceedings in order to allow an unresolved motion for discovery in an ancillary proceeding to be resolved. Contrary to the situation in *Convertino*, here discovery is already purportedly completed and Chevron is trying to prove even more conclusively that Page has not complied with the Court's order and, in the process, ensure that Page has in fact produced all responsive documents. In *Green v. Nevers*, 196 F.3d 627, 632 (6th Cir. 1999), the Sixth Circuit found discovery moot not because the trial had ended, as Page claims, but because the discovery sought was irrelevant to the issues in the case and "could not have any legal consequences."

The remaining cases on which Page relies are criminal cases in which settlements or pleas were reached, which rendered those subpoenas moot—a situation that is completely different from the present proceedings. In *United States v. Krane*, the subpoenas were held moot because the guilty plea of the defendants resulted in the vacatur of a criminal trial. 625 F.3d 568, 573 (9th Cir. 2010).[5] Similarly, in *United States v. Miller*, 685 F.2d 123, 124 (5th Cir. 1982), the mooted subpoena was issued in a criminal tax fraud case which the parties settled prior to the completion of discovery. *See Oklahoma Radio Assocs. v. F.D.I.C.*, 3 F.3d 1436, 1442 (10th Cir.

---

[5] In that same case, the Ninth Circuit nonetheless recognized, albeit in *dicta*, that where a subpoena impacts parallel proceedings where at least one is live, a "'live controversy remain[ed].'" *Id.* at n.4.

1993) (including *Miller* in list of Fifth Circuit cases where settlement affected the vacatur of an opinion). *Cf. Clipper v. Takoma Park, Md.*, 898 F.2d 18, 19 (4th Cir. 1989) (declining to withdraw opinion after settlement reached). *Central Wyoming Law Assoc. v. Denhardt*, 60 F.3d 684, 686 (10th Cir. 1995), and *In re Steinberg*, 837 F.2d 527, 527 n.1 (1st Cir. 1988), also were cases where a subpoena issued to a criminal defendant was held moot because a *criminal* case settled or because the trial had been completed.

Those cases can be distinguished from the present case. This is not a case where the parties have come to an agreement or plea and decided to put aside their differences to end the controversy. The dispute between the parties in the underlying actions has not settled and is still very much a live dispute. Indeed, the Ecuadorian plaintiffs' public statements have shown that they intend to continue to press their case in spite of the decision by Judge Kaplan in New York. *See, e.g.*, Gowen Group Law office, *Report: Judge Kaplan Let Chevron Make "Mockery of Justice" in New York RICO Case*, available at http://chevrontoxico.com/news-and-multimedia/2014/0404-judge-kaplan-let-chevron-make-mockery-of-justice (April 4, 2014, last accessed June 19, 2014). And unlike the cases on which Page relies, where a single controversy was at play, this case concerns multiple subpoenas related to various actions, including the live Treaty Arbitration currently pending in The Hague, and an "inherent overlap of materials" in those subpoenas. 4/22/2014 Hr'g Tr. at 6:1-3.

## CONCLUSION

For the reasons set forth herein, Chevron respectfully requests that the Court deny Page's motion for reconsideration.

Dated: June 23, 2014                                    Respectfully submitted,

                                                       s/ Peter E. Seley

16

Peter E. Seley
Claudia M. Barrett (*Pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Ave., N.W.
Washington, DC 20036
Tel: (202) 955-8500
Fax: (202) 955-9594
Email: PSeley@gibsondunn.com
Email: CBarrett@gibsondunn.com

*Attorneys for Chevron Corporation*